**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

**SAYLOR, C.J., EAKIN, BAER, TODD, STEVENS, JJ.**

| | |
|---|---|
| MICHAEL G. LUTZ LODGE NO. 5, OF THE FRATERNAL ORDER OF POLICE, | : No. 42 EAP 2014 |
| | : |
| | : Appeal from the Order of the |
| Appellant | : Commonwealth Court entered on January |
| | : 2, 2014 at No. 114 CD 2013, affirming the |
| | : Order of the Court of Common Pleas of |
| v. | : Philadelphia County, Civil Division, |
| | : entered on December 27, 2012 at No. |
| | : 2165 October Term 2011 |
| CITY OF PHILADELPHIA, | : |
| | : ARGUED:  May 5, 2015 |
| Appellee | : |

**<u>OPINION</u>**

**MADAME JUSTICE TODD**                    **DECIDED:  December 21, 2015**

In this appeal by allowance, we consider the breadth of the authority of an interest arbitration panel acting pursuant to the Policemen and Firemen Collective Bargaining Act ("Act 111").[1]  For the reasons that follow, we find that an interest arbitration panel's authority is limited to addressing issues properly submitted to the panel, or those questions reasonably subsumed within those issues.  As we conclude the panel in this matter exceeded its authority by speaking to an issue that was neither bargained over, raised in prior related proceedings before the panel, nor reasonably subsumed within the issue that was properly before the panel, we reverse the order of the Commonwealth Court which affirmed the underlying interest arbitration award.

---

[1] Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. §§ 217.1-217.10.

The facts underlying this matter are not in dispute. June 30, 2009 marked the expiration of the collective bargaining agreement between Appellee, the City of Philadelphia ("City"), and Appellant, the Michael G. Lutz Lodge No. 5 of the Fraternal Order of Police ("FOP"), which is the exclusive collective bargaining representative for the bargaining unit of Philadelphia police officers. After negotiations to reach a successor contract failed to resolve bargaining disputes directly, the parties proceeded to binding interest arbitration, pursuant to Section 4 of Act 111, 43 P.S. § 217.4.[2] After numerous days of hearings, spanning five months, on December 18, 2009, the interest arbitration panel ("Panel") issued an award ("2009 Award") which spoke to certain specific disputed issues, and put into place a new collective bargaining agreement extending from July 1, 2009 through June 30, 2013 ("Agreement"). Except as modified by the 2009 Award, all other terms of the prior collective bargaining agreement remained in effect. 2009 Award, § 23.

One issue before the Panel, which is the focus of this appeal, concerned advance notification and premium overtime for police officers for court appearances. Specifically, Section 14 of the 2009 Award provides:

> Effective January 1, 2010, officers who do not receive notice at least 48 hours in advance of the time they are directed to appear for a required court appearance, other than a preliminary hearing, scheduled for a date the officer is not scheduled to work, shall be paid a minimum of 4 hours of overtime at a rate of 2.5 times the employee's regular rate.

---

[2] "Interest arbitration," as more fully discussed below, is the dispute resolution process utilized when an employer and a union are unable to agree on the terms of a potential collective bargaining agreement. This may be contrasted with "grievance arbitration," which is the process through which the parties resolve disputes which arise as to the proper interpretation of, or compliance with, an existing collective bargaining agreement. Twp. of Moon v. Police Officers of the Twp. of Moon, 498 A.2d 1305, 1308 n.5 (1985).

2009 Award, § 14. In addition to this notification and compensation provision, the 2009 Award also allowed that certain officers who had obtained a specified amount of seniority would no longer be required to reside within the City of Philadelphia. 2009 Award, § 6. Finally, the Panel took the step of retaining jurisdiction to resolve any disputes which arose "regarding implementation" of the 2009 Award. 2009 Award, § 22.[3]

Thereafter, and in light of Section 14 of the 2009 Award, the Philadelphia Police Department ("Department") issued a notification which addressed certain classes of court appearances within the 48-hour window and premium overtime compensation which was contained in the 2009 Award. Specifically, the Department declared that if an officer was properly notified at least 48 hours ahead of time of a court appearance on a scheduled day off, and the case was continued until the next day, the officer would not be entitled to the premium overtime, even if he did not receive additional notification. The Department reasoned that, as the officer had been notified, there was no disruption to his or her personal schedule. In response, the FOP filed grievances pursuant to the grievance arbitration clause of the Agreement, seeking a determination that the Department did not properly comply with Section 14 of the 2009 Award. While those grievances were pending, however, the FOP also sought an immediate hearing before the Panel to resolve issues which arose from the City's implementation of the 2009

---

[3] We note the anomaly of the interest arbitration panel's retention of jurisdiction "to resolve any disputes regarding implementation of the 2009 Award," 2009 Award, § 22, as the resolution of disputes over proper application and interpretation of a collective bargaining agreement is typically in the nature of grievance arbitration.

Award's court notice provisions, pursuant to the retainer of jurisdiction provision. 2009 Award, § 22.

In response, the City submitted a proposal, 11 days before the hearing, seeking, *inter alia*, that the City be permitted to provide officers notice of court appearances electronically through a telephone number or email. As background, evidently as far back as 1999, when the Department received notice from the Philadelphia District Attorney's Office, or a subpoena from private counsel, that a police officer was needed to appear in court, notification to the officer was provided in person, through the officer's platoon commander, who was required to ensure that the officer received and signed the notice. In rare instances, officers were notified by messenger or telephone, if time or circumstances did not permit notification by the platoon commander. If the officer did not comply with the notice, he or she could have been subjected to discipline. The Department's proposed notification procedures changed this system, and included a process by which notification was deemed to be sufficient if a message was left on an officer's voicemail, and, further, such notice was considered to be sufficient for all court appearances, not just those to be completed within 48 hours.

The FOP responded that the Panel did not have the jurisdiction or authority to grant the City's request, as the proposal implicated the manner of notice, which was not the subject of Section 14, and, further, that implementation of Section 14 was the only issue then before the Panel. The City asserted that, by returning to the Panel (in interest arbitration) concerning the implementation of Section 14, the FOP brought the manner of notification within the Panel's jurisdiction and authority. Moreover, the City claimed that the manner of notification was linked to the issue of payment of the

premium overtime for late notification, as well as the relaxed residency requirements in Section 6. More specifically, with respect to the second point, the City maintained that, in light of the relaxed residency requirement for officers, electronic notification was required to ensure that greater than 48 hours notice was given to officers so that their lives would not be disrupted and so that the City would not have to pay premium overtime for tardy notice.

On October 6, 2011, the Panel, in a divided 2-1 decision (the "2011 Award"), found in favor of the City, determining in Section 4 of the 2011 Award that: (1) the Department could provide electronic notice of a court appearance using an officer's email address or telephone number, thus requiring all officers to provide the Department with an email address or telephone number; (2) any officer who chose telephone notice was required to have an answering machine or voicemail service; (3) the sending of an email or leaving a message would constitute sufficient notice of an officer's required court appearance; and (4) any officer who did not comply with the electronic notification policy would be ineligible for premium overtime and subject to discipline. 2011 Award, § 4. The Panel majority recognized that the notice issue was not before the Panel during the 2009 interest arbitration, but, nevertheless, believed it was "part-and-parcel" of Section 14's implementation. The FOP-appointed arbitrator filed a vigorous dissent, asserting that the majority had changed what he believed to be a grievance arbitration proceeding into an interest arbitration proceeding, and, thereby altered the terms of the 2009 Award without proper authority. The FOP appealed the Panel's 2011 Award.

On December 27, 2012, the Philadelphia County Court of Common Pleas upheld the arbitration award. The court, after determining that the matter was an appeal of an

interest arbitration award, and not the appeal of a grievance award, opined that the Panel did not exceed its powers in issuing Paragraph 4 of the 2011 Award, as, in its view, the issue of manner of notification was properly before the Panel. More pointedly, the court determined that the Panel did what the FOP requested the Panel to do — resolve issues surrounding the implementation of Section 14 of the 2009 Award, a matter for which the Panel specifically retained jurisdiction. Like the Panel, the trial court concluded that the manner of notification and payment of premium overtime were linked, and, as the Panel was not limited to addressing whether the premium overtime pay provided for in Section 14 could be given, it possessed the authority to include Paragraph 4 in the 2011 Award in crafting the appropriate relief. The FOP filed an appeal to the Commonwealth Court.

An *en banc* Commonwealth Court, in a sharply divided 4-3 published opinion, affirmed. Michael G. Lutz Lodge No. 5 v. City of Philadelphia, 84 A.3d 343 (Pa. Cmwlth. 2014). Writing for the majority, Judge Anne Covey, made threshold determinations that the proceeding was in the nature of an interest arbitration rather than a grievance arbitration, and that the authority of the Panel was at issue, not the jurisdiction of that tribunal.[4] As to the question of the Panel's authority to speak to the manner of notification, the majority noted that the FOP never disputed that the entirety of Section

---

[4] The distinction between authority and jurisdiction is subtle but important. As our Court has explained, "Jurisdiction and power are not interchangeable . . . [j]urisdiction relates solely to the competency of the particular court or administrative body to determine controversies of the general class to which the case then presented for its consideration belongs. Power, on the other hand, means the ability of a decision-making body to order or effect a certain result." Riedel v. Human Relations Comm'n of the City of Reading, 739 A.2d 121, 124 (Pa. 1999).

14 was at issue during the hearings regarding implementation and that the manner of notification issue was merely an extension of the payment issue. Moreover, the majority pointed out that the 2011 Award regarding how notices are delivered relates directly to how the court notification provision is implemented. Further, the majority opined that, as the method of delivery of notice was not explicitly provided for in the 2009 Award, Paragraph 4 of the 2011 Award did not impermissibly alter the prior award. Thus, the majority concluded the Panel did not exceed its authority, and it affirmed the arbitration award.

Judge Kevin Brobson filed a dissenting opinion, joined by Judge Bernard McGinley, reasoning that the manner of notice should not have been the subject of the 2011 Award, as it was not before the Panel after the parties reached impasse in 2009. Judge Brobson believed, however, that the Panel exceeded its *jurisdiction* over the matter, not just its power or authority. According to Judge Brobson, the Panel had jurisdiction only over matters which were originally before it in 2009, when it retained jurisdiction. As the manner of notice was a term and condition of employment, Judge Brobson observed that the matter must have been bargained over to impasse, i.e., where the parties could not resolve outstanding disputes between them, which was not the case, in order to invoke interest arbitration. Thus, according to Judge Brobson, the Panel did not have jurisdiction over the question of manner of notice.

Judge Patricia McCullough penned a concurring and dissenting opinion in which she found that the Panel exceeded its authority in addressing a waived issue, as the manner of notice was never bargained over prior to the 2009 interest arbitration hearings, and the matter was not raised at the 2009 hearings. Judge McCullough

warned against using the process of implementation to serve as a means to reopen the contract. Thus, according to Judge McCullough, the Panel had no authority to place the manner of notice question at issue.

The FOP appealed, and we granted allocatur on the issue of the breadth of an interest arbitration panel's authority to address a question which was not bargained over and not directly at issue before the panel in the prior interest arbitration award. Specifically, we granted allowance of appeal on the following issues:

> Whether the Commonwealth Court's order allowing a panel of arbitrators to address an issue never raised in the underlying interest arbitration proceedings is contrary to decades of authority from courts of this Commonwealth limiting the authority of arbitrators to address only those issues timely and properly placed before them?
>
> Whether the Commonwealth Court's order allowing a panel of arbitrators to address an issue never raised in the underlying interest arbitration proceedings is contrary to decades of authority from courts of this Commonwealth stating that decisions of Act 111 arbitrators are to be rendered swiftly and with finality?

Michael G. Lutz Lodge No. 5 v. City of Philadelphia, 101 A.3d 782, 783 (Pa. 2014) (order).

By way of background, in public sector labor law there are primarily two types of alternative dispute resolution processes - interest arbitration and grievance arbitration. In interest arbitration, an arbitration panel determines the terms and conditions of employment after the parties fail to reach an agreement through collective bargaining negotiations. Interest arbitration is, in essence, the process by which the parties, through a neutral arbitrator or panel, create a collective bargaining agreement. This

process may be contrasted with grievance arbitration, in which the parties dispute the proper interpretation or application of provisions contained in an existing collective bargaining agreement. Thus, while interest arbitration leads to the creation of a collective bargaining agreement, grievance arbitration is the process by which the parties settle disputes concerning the interpretation or application of an extant collective bargaining agreement. In the matter *sub judice*, it appears that there was some controversy below as to whether this appeal involved interest arbitration or the review of a grievance arbitration award. Before us, however, the FOP does not seriously dispute that the issue should be considered a vestige of an interest arbitration award, 43 P.S. § 217.7, and, thus, we proceed accordingly.[5]

---

[5] The FOP, at one point, seemingly concedes that the proper context is that of interest arbitration. Appellant's Brief at 23 ("As the Panel in this case was sitting as an *interest* arbitration panel, then it is necessary to recall the specific and *mandatory* requirements of Act 111 with regard to the convening of such panels." (emphasis original)). Further, the FOP raised the nature of the arbitration proceedings as a discrete issue before the Commonwealth Court, but does not do so before our Court. Yet, the FOP in its principal brief also suggests this matter should be considered in the context of a grievance arbitration. Appellant's Brief at 34 ("The Panel here improperly disturbed this balance by doing that which it was [not] empowered to do by either the parties' agreement or Act 111: disturb the balance by playing interest arbitrator in the context of a grievance arbitration proceeding."). In its *reply brief*, however, the FOP first articulates its view that the underlying proceeding unequivocally constituted a grievance arbitration. As the FOP (1) filed grievances under the Agreement and for arbitration before the interest arbitration Panel; (2) in its principal brief does not in any meaningful fashion challenge the lower tribunal's determination that the proceedings before us are in the context of an interest arbitration proceeding; (3) did not raise this question as a discrete issue before our Court; and (4) may not raise a new issue, or adequately develop an existing issue, in a reply brief, see Commonwealth v. Fahy, 737 A.2d 214, 218 n.8 (Pa. 1999) (reply brief may not be a vehicle to raise new issues or to argue issues raised but inadequately developed in appellant's original brief), we address this matter as one sounding in interest arbitration.

Interest arbitration constitutes a significant component of a more global balancing or compromise with respect to the rights of employees and employers in public sector labor relations. The foundational principles which underlie this balance were considered by our Court in two cases decided the same day: Borough of Ellwood City v. PLRB, 998 A.2d 589 (Pa. 2010), and City of Philadelphia v. IAFF, 999 A.2d 555 (Pa. 2010). We explained in those cases that, in 1968, in the face of illegal strikes and labor unrest in the public sector, the General Assembly enacted Act 111, which granted to police and fire personnel the right of collective bargaining. We noted that "[t]he law relating to police and fire personnel, whose services are so vital to an ordered society . . . was created to strike a more perfect balance between the need of the Commonwealth to insure public safety and the rights of the worker." Ellwood City, 998 A.2d at 595 (quoting Pennsylvania State Police v. Pennsylvania State Troopers' Ass'n (Betancourt), 656 A.2d 83, 89 (Pa. 1995)).

Thus, central to Act 111 and its passage to quell labor unrest was the employees' ability to "have the right to bargain collectively with their public employers concerning the terms and conditions of their employment, including compensation, hours, working conditions, retirement, pensions and other benefits, and . . . the right to an adjustment or settlement of their grievances or disputes in accordance with the terms of [Act 111]." 43 P.S. § 217.1; Ellwood City, 998 A.2d at 595-96. As our Court explained in Twp. of Moon, "the General Assembly was committed to the view that the right to collective bargaining over terms and conditions of employment was critical to the restoration and maintenance of harmony in the public employment sector." 498 A.2d at 1309. Ultimately, we stressed in Ellwood City that "the importance of collective bargaining over

the terms and conditions of their employment cannot be understated." Ellwood City, 998 A.2d at 596. The right to strike to pressure a public employer to reach an agreement, however, was withheld, due to the critical services provided by safety personnel, and the egregious consequences that could result if such employees were on strike. Thus, police and fire personnel gave up any ability to strike for the guarantee of collective bargaining and the possibility of binding interest arbitration if negotiations failed to culminate in a contract. Simply stated, binding interest arbitration is the *quid pro quo* for police and fire personnel relinquishing any right to strike.

Consistent with this *quid pro quo* deal struck by the legislature is the idea of circumscribed judicial review of interest arbitration awards. We have long held that judicial review of an Act 111 interest arbitration award is proper only within the limited realm of narrow *certiorari*. Betancourt, 656 A.2d at 89-90. Indeed, as oft-repeated in our decisional law, the General Assembly initially provided for no judicial review of arbitration awards, but subsequent caselaw by our Court recognized a limited ability for court review, declaring that the narrow *certiorari* scope of review was appropriate for judicial review of interest arbitration awards. Washington Arbitration Case, 259 A.2d 437, 441 (Pa. 1969). Under this narrow *certiorari* scope of review, a court may review arbitration awards only to consider questions concerning: (1) the jurisdiction of the arbitrators; (2) the regularity of the proceedings; (3) an excess of the arbitrator's power; and (4) deprivation of constitutional rights.

Here, the parties dispute whether the manner of notification issue was properly before the Panel. Thus, the threshold question for us is whether this issue implicates any of the four permissible areas of inquiry allowed under narrow *certiorari*. We recently

answered that question in <u>Dept. of Corrections v. Pa. State Corrections Officers Assoc.</u>, 12 A.3d 346, 356 n.15 (Pa. 2011), wherein we held that "[a]n award pertaining to an issue that was not placed in dispute before the board also reflects an excess of the arbitrators' powers," citing <u>Appeal of Upper Providence Police</u>, 526 A.2d 315, 322 n.5 (Pa. 1987). As the question of waiver implicates the narrow *certiorari* prong regarding the excess of an arbitrator's powers, we may consider the substance of the underlying issue of whether the arbitration panel exceeded its authority when it considered the proper manner of notification of police officers regarding court appearances under narrow *certiorari* review.[6]

Turning to the arguments of the parties, Appellant, the FOP, offers that Act 111 arbitrators are constrained in their authority and limited to those issues which are placed before them by the parties. This approach, as asserted by the FOP, is based in notions of adequate notice and an opportunity to be heard, as well as based in Act 111 which requires the submission of the issues in dispute at least 110 days prior to the start of the

---

[6] The FOP seemingly contends, in part, that their challenge is to the jurisdiction of the interest arbitration panel. Generally, the question of whether a tribunal has jurisdiction to decide an issue focuses upon whether that tribunal is competent to determine controversies of the general class to which the case presented for its consideration belongs. <u>Heath v. WCAB (Pa. Bd. Prob. & Parole)</u>, 860 A.2d 25, 29 (Pa. 2004). Consistent therewith, our Court has explained that the question of an Act 111 arbitrator's jurisdiction traditionally poses the single question: "did the decision-maker in the adjudicatory process act in that general class of controversies that the law empowers it to consider." <u>City of Philadelphia v. Int'l Ass'n of Firefighters, Local 22</u>, 999 A.2d 555, 564 (Pa. 2010). We find that the Commonwealth Court below properly concluded that "jurisdiction is not at issue since there is no question that the Panel was initially convened and subsequently reconvened to resolve disputes arising out of the [Agreement's] court notice provision." <u>Michael G. Lutz Lodge No. 5</u>, 84 A.3d at 351. As issues involving court notices are within the general class of controversies the Board was authorized to hear, we agree that jurisdiction is not at issue in this appeal.

fiscal year.  See 43 P.S. § 217.2.  Applying these guidelines, the FOP maintains that at no point during the negotiations or the 2009 interest arbitration proceedings did the City or the FOP seek modification of the existing manner of officer notification.  The FOP asserts that, in 2011, the Panel did not limit itself to the narrow issue before it — whether, in implementing Section 14 of the 2009 Award, the City had violated the Agreement by failing to pay officers who had received less than 48 hours' notice for court at 2.5 times their pay.  Rather, the Commonwealth Court ignored these limiting principles and impermissibly expanded the concept of notification to include manner of notice which, according to the FOP, rewrites a section of the Agreement which was never placed at issue by the City or the FOP.  The FOP claims that compensation for court appearances is distinct from the manner of notification, and, according to the FOP, the Panel had the authority only to require that the 2009 Award be implemented.  The FOP offers that, under the Commonwealth Court's approach, any issue which remotely touches an issue already decided may be revisited, and completely re-written, and, in the instant case, expanded, as the notice provision applies now to all court appearances.  The FOP stresses that this requires officers, at their own expense, to purchase smart phones and answering machines, and face discipline if they do not comply.  Finally, the FOP warns that such an open-ended approach to arbitration will disrupt the finality sought by the legislature when it enacted Act 111 and its dispute resolution process.

In response, the City, first raises a somewhat technical aspect of the proceedings, which was adopted by the Commonwealth Court majority, Michael G. Lutz Lodge No. 5, 84 A.3d at 351 n.11, looking back to the 2009 Award proceedings and

offering that the FOP's proposal requested that no discipline be imposed on an employee for less than 48 hours *written* notice. The Panel did not include this limitation in its Award. This, according to the City, placed the issue of court notices, and the manner of notification (in writing) of court notices before the Panel in 2009. The City also claims that the manner of notification had never been part of a collective bargaining agreement, but was memorialized in a "Department Directive," which was a unilaterally-adopted management policy, and, thus, was evidence that the Panel did not disrupt an existing agreement. Related thereto, the City points out that the FOP invoked the Panel's jurisdiction to resolve differences between the parties on the implementation of the 2009 Award, and, after the FOP's request for a hearing, the FOP did not object to the City's subsequent submission regarding electronic notice in the hearings which culminated in the 2011 Award. Thus, the City argues the Panel did not exceed its authority as the issue of the manner of notification was at all times properly before the Panel.

Similarly, the City maintains that the 2011 Award dealt with implementation of the 2009 Award, which subsumed the issue of manner of notification, as the 2009 Award, which granted premium overtime and allowed officers to live outside of the City, substantially increased the financial and operational burden on the Department to deliver court notices to officers. Moreover, the City offers that, once an issue is properly in dispute, the arbitration panel may resolve that issue in a fair manner within the total context of the award. Therefore, the City argues that, once the FOP sought to reconvene the Panel regarding notice implementation issues, the City, to save

resources and avoid unnecessary litigation, permissibly chose to place its proposed changes to the manner of notification before the Panel as well.

With respect to the substance of the 2011 Award, the City offers that providing for other-than-personal notice is eminently reasonable in this electronic age, did not require an illegal act, and, thus, satisfied the extremely limited scope of review of an Act 111 arbitration award. Further, the City maintains that, in its 2011 Award, the Panel did not create new terms out of whole cloth, but merely addressed implementation issues which were before it, and that the 2011 Award was not inconsistent with any contract term between the parties. Thus, the City argues the Panel did not "re-write" the Agreement, as alleged by the FOP. Moreover, the City contends that, because police officers were previously required to provide a telephone number for emergency notification, the electronic delivery of notices is not a significant change in the parties' existing non-contractual practice. Further, the City emphasizes that the FOP offered no evidence at the hearing as to any burden on the officers due to the proposed electronic notification. Thus, not only was the 2011 Award consistent with the prior Act 111 procedures, according to the City, the actual award was consistent with, and a mere logical expansion of, existing practice. Finally, contrary to the FOP's claims, the City argues that the 2011 Award complied with the FOP's due process rights, as the FOP invoked the Panel's jurisdiction, had notice of the issues in advance of the hearing, was represented by counsel, and had the opportunity to present evidence.

Although our Court has not directly spoken to the breadth of an interest arbitration panel's ability to consider an issue before it, both statutory provisions and caselaw inform our decision today. Specifically, Act 111 requires that collective

bargaining "shall begin at least six months before the start of the fiscal year of the political subdivision . . . and any requests for arbitration, as herein provided, shall be made at least one hundred ten days before the start of the fiscal year." 43 P.S. § 217.2. Bargaining to impasse, of course, is the prerequisite to the initiation of interest arbitration. 43 P.S. § 217.4; Philadelphia Fire Officers Ass'n v. PLRB, 369 A.2d 259 (Pa. 1977). Specifically, when impasse is reached, "either party to the dispute, after written notice to the other party containing specifications of the issue or issues in dispute, may request the appointment of a board of arbitration." 43 P.S. § 217.4. While this Court has not spoken directly to this issue in this context, the Commonwealth Court has for decades indicated that Act 111 arbitrators may decide only those matters submitted to them, and an award outside of the issues presented is unenforceable. See, e.g., City of Wilkes Barre v. City of Wilkes Barre Benevolent Ass'n, 814 A.2d 285, 291 (Pa. Cmwlth. 2002); In re Arbitration Award Between Yoder Police and Lower Yoder Twp., 654 A.2d 651, 653 (Pa. Cmwlth. 1995). As noted by the Commonwealth Court, "where a demand is a major one or cannot be fairly subsumed within an issue, it must be specifically raised." City of Pittsburgh v. FOP, Fort Pitt Lodge No. 1, 850 A.2d 846, 854 (Pa. Cmwlth. 2004). Thus, the statutory framework and the Commonwealth Court caselaw speaking to the interest arbitration process require impasse; that discrete issues be submitted to interest arbitration for contract formulation by the interest arbitration panel; and that issues not so preserved, unless reasonably subsumed within properly preserved issues therein, are beyond the scope of the interest arbitration process and will not be enforceable.

Consistent with Act 111 and prior Commonwealth Court caselaw, and as a crucial part of the *quid pro quo* balance between the rights of public employers and public employees, we hold an interest arbitration award under Act 111 may embrace only those issues which the submitting party has specifically raised in the notice of arbitration, or which are reasonably considered as subsumed within those issues. While granted broad powers, and, as noted above, free from only the most limited of judicial review, an arbitration panel "does not sit to dispense [his or her] own brand of . . . justice." Cf. United Steelworkers v. Enterprise Wheel and Car Corp., 363 U.S. 593, 597 (1960). As artfully explained by the Commonwealth Court, "[A]n arbitrator does not have a roving commission to do what he or she believes is necessary to put everything right, to construct a 'better agreement.' Arbitrators are required to address the issues submitted within the context of the positions of the parties and effectuate the relief requested, not to reform the collective bargaining agreements." Marple Twp. v. Delaware County FOP Lodge 27, 660 A.2d 211, 215 (Pa. Cmwlth. 1995).

Further, and related thereto, while an interest arbitration panel may retain implementation jurisdiction, as was the case here, this power to insure an award is achieved should not serve as a means to reopen the underlying agreement. Indeed, if significant terms and conditions of employment not bargained over could subsequently be made part of a collective bargaining agreement in this fashion, "a host of arbitration awards may be re-opened to litigate matters not previously considered under the guise of implementation." Michael G. Lutz Lodge No. 5, 84 A.3d at 363 (McCullough, J., Concurring and Dissenting). This, in turn, would not only vitiate the initial phase of the collective bargaining process — the actual give-and-take of negotiations between the

parties — but, more importantly, would severely undermine the core policies undergirding interest arbitration — a swift, inexpensive, and final achievement of a collective bargaining agreement between the parties.

Applying these legal principles to the matter *sub judice*, the parties herein never bargained to impasse over the specific issue of the manner of notification, even though the manner of notice was in place for decades. Moreover, the parties did not raise the issue before the 2009 arbitration panel, and the 2009 Award itself said nothing about the manner of officer notification. Indeed, we reject the City's, and the Commonwealth Court's, somewhat technical reasoning that, because the FOP requested "48 hours written notice," that the method of delivery was at issue in 2009, as written notice was part of the existing practice regarding delivery at that time. Rather, the discrete issue of the manner of notification came to the fore only when raised by the City at the time the FOP sought to enforce implementation of the 2009 Award. Related thereto, the jurisdictional basis for the Panel's consideration of questions of implementation, by its plain language, is limited to the implementation of the terms of the 2009 Award. See 2009 Award, § 22 ("The Panel shall retain jurisdiction over this Award in order to resolve any disputes *regarding implementation of its terms*." (emphasis added)). Yet, the 2009 Award did not speak by its terms about the manner of notification of police officers.

While the manner of notification was not expressly raised by the parties, as noted above, interest arbitrators may speak to an issue if it is reasonably subsumed within the issues properly before the arbitration panel. Under the circumstances before us, however, we simply cannot conclude that the issue of the manner of notification was reasonably subsumed in, or "part-and-parcel" of, the overall notice compensation

question. The 2009 Award did not address in any fashion the manner in which notices were to be distributed. The 2011 Award, however, made drastic changes to the existing and long-standing manner of notification procedure. Yet, the timing of notification and premium overtime compensation for an officer's court appearance are simply not directly related to, or even dependent upon, the manner of notification. The manner of notification is not implicit in, nor inherently comingled with, the distinct issue of notice compensation. Indeed, the requirements regarding the timing of notification and increased compensation for court appearances may be achieved without a change to the manner of notification. Thus, we hold that the Panel exceeded its authority in addressing the manner of notification.

Finally, we offer no opinion as to the merits of the in-person notice system in place in Philadelphia, and recognize that electronic notification may be a more modern, efficient, and fiscally advantageous manner to provide court notices to police officers. Yet, issues over alteration of a decade's long policy by the City should be resolved through the give and take of collective bargaining within the confines of Act 111, and arbitrators should not stray from the issues properly placed before them, even if well intended. Rather, it is for the parties to negotiate in the first instance over significant and long-standing terms of employment, and, the parties are free to bargain over electronic notification in future negotiations.

The order of the Commonwealth Court is hereby reversed. Jurisdiction relinquished.

Mr. Chief Justice Saylor and Mr. Justice Stevens join the opinion.

Mr. Justice Eakin files a dissenting opinion.

Mr. Justice Baer files a dissenting opinion.