IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ohio Township Police Association, :
:
Appellant :
:
v. : No. 1695 C.D. 2024
: Argued: November 6, 2025
Ohio Township :


BEFORE: HONORABLE ANNE E. COVEY, Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION BY JUDGE WOJCIK                    FILED: January 7, 2026


The Ohio Township Police Association (Union) appeals from the November 16, 2024 order of the Allegheny County Court of Common Pleas (trial court) which upheld the Arbitration Award issued by Marc A. Winters (Arbitrator) in favor of Ohio Township[1] (the Township). The Arbitrator concluded that the Township correctly declined to place Khalid Aladdin (Officer) on administrative duty under Section 2 of Act 59,[2] 44 Pa. C.S. §7203(c), pending a return-to-work determination for his alleged struggle with post-traumatic stress disorder (PTSD).[3] Further, however, the Arbitrator determined that the Township lawfully removed Officer from service with the Township by granting him an honorable discharge

---

[1] While not joined in this action, the Ohio Township Police Department also serves a number of neighboring municipalities, including Aleppo Township, Ben Avon Heights Borough, Emsworth Borough, Kilbuck Township, Neville Township, and Sewickley Hills Borough.

[2] Act of July 14, 2020, P.L. 624, No. 59, 44 Pa. C.S. §§7201-7204.

[3] Act 59 defines PTSD as it is defined in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, 5th edition. *See* 44 Pa. C.S. §7202.

under the Police Tenure Act.[4]  Before this Court, the Union argues, *inter alia*, that the Arbitrator exceeded his jurisdiction by reaching the honorable discharge issue because it was beyond the scope of the Union's grievance.  We agree.

## I. Background

As it concerns grievances, the Collective Bargaining Agreement (CBA) between the Township's Police Department and its Union provides the following: "A grievance is hereby defined as . . . a complaint by an officer, group of officers, entire shift of officers or the entire police force regarding the meaning, interpretation or application of any provision of this Agreement . . . ."  Reproduced Record (R.R.) at 6a.  The CBA also formalizes the procedure for filing a grievance:

> STEP I – Any police officer who believes he has a grievance may submit his grievance in writing to the Chairman of the Grievance Committee of the Police Department.  Such grievance shall be submitted within two (2) weeks of the day on which the matter giving rise to the grievance occurred.
>
> STEP II – The grievance filed with the Grievance Committee shall be submitted to the Chief of Police (or person in charge of Police if there is no Chief) for adjustment and settlement within two (2) weeks.  The Chief of Police (or person in charge of Police) shall render his decision in writing within two (2) weeks of said adjustment and settlement.
>
> STEP III – The grievance filed with Grievance Committee shall be submitted to the Township Manager for adjustment and settlement within two weeks (2).  The Township Manager shall render his decision in writing within two (2) weeks of said adjustment and settlement.

---

[4] Act of June 15, 1951, P.L. 658, *as amended*, 53 P.S. §§811-816.

STEP IV – The Grievance Committee may, within two (2) weeks thereafter, appeal the decision of the Township Manager to the Board of Supervisors. The Board of Township Supervisors shall render a decision withing one (1) week of their next regularly scheduled monthly meeting of the Board of Supervisors.

R.R. at 7a. Should these procedures fail to settle the dispute, the CBA dictates that the grievance shall proceed to binding arbitration when "the party seeking arbitration gives written notice to the other party of such desire." *Id.* at 7a-8a.

The instant grievances, or lack thereof, arise from Officer's service with the Township as a police officer, which began in a part-time capacity around January of 2020. *See, e.g.*, Arbitrator's Hearing, 11/9/23, Notes of Testimony (N.T.) at 178. Based on the record before us, it appears that Officer served the Township without issue until January 10, 2023, when the Union's president, Robert Patsilevas, requested a meeting with Joseph Hanny, the Township's Chief of Police, on Officer's behalf. *Id.*, N.T. at 15. At the meeting, Patsilevas and Officer related to Chief Hanny that Officer had begun experiencing a number of mental health issues which Officer believed was the result of PTSD, such as communicating with a voice in his head that he referred to as "Zoey." *See id.*, 15-16, 115-16. "Zoey" was not purely an auditory hallucination as Officer had at times described what she looked like. *See, e.g., id.*, N.T. at 136-37. Troublingly, "Zoey" directed Officer to hurt himself. *Id.*

At the same time, Officer expressed to Chief Hanny that he was becoming very agitated at work with others and while on call, so agitated that he was possibly looking to "act out." Arbitrator's Hearing, N.T. at 17-18. Officer, however, related that "acting out" would mean ignoring the subject of his call or leaving work altogether. *Id.* At the conclusion of the meeting, Chief Hanny directed Officer to take the time he needed off from work and informed Officer that the

3

Township would be in contact with him once Chief Hanny figured out what the appropriate next steps were. *Id*. at 17-18. In the meantime, Chief Hanny began receiving information concerning Officer's condition and behavior from others within the Township's Police Department. One police officer related that Officer "wanted to find somebody black on Neville Island, on the island, and start a race war, that he was just having so many issues and wanted to act out towards that." *Id*. at 19-20; *see also id*., N.T. at 229-31. Chief Hanny eventually learned from a report that Officer had once expressed becoming so angry during a funeral procession that he made 15 traffic stops in a 45-minute span for the purpose of provoking a fight. *Id*., N.T. at 115-16.

Following a Fitness for Duty evaluation conducted by neuropsychologist Glen Getz, Ph.D., on January 25, 2023, the Township placed Officer on short-term disability leave. R.R. at 120a. In his report, Dr. Getz noted that Officer presented a peculiar case: while Dr. Getz did not doubt that officer was experiencing *some* psychiatric symptoms, Officer appeared to be over-reporting or exaggerating the severity of his symptoms compared to those "described by people with genuine, severe psychopathology." R.R. at 205a. Dr. Getz conceded that this was perhaps explainable by Officer's language barrier, as Officer was born in Iraq and grew up there during the Iraq War. Officer later lived in Egypt and Syria before immigrating to the United States as an adult. Thus, he possibly misinterpreted some of Dr. Getz's questions. *Id*. at 204a-05a. Dr. Getz therefore warned that between the language barrier, the unique impact of a police officer's role on public safety, and the possibility that Officer over-reported his symptoms, the results of his report should be read with caution. *Id*. at 205a. In any case, whether his symptoms were as severe as Officer claimed or whether he exercised poor judgment in over-

4

reporting his symptoms, Dr. Getz concluded that: (1) Officer posed a risk of harming himself or others; (2) Officer could not safely perform the essential functions of his position; (3) Officer should receive 90-120 days off of work to obtain appropriate treatments before being re-evaluated; (4) Officer should receive an increased level of care, such as an intensive outpatient program or partial hospitalization; and (5) Officer should receive another Fitness for Duty evaluation before returning to work. *Id*. at 206a-07a.

On March 23, 2023, Lisa DeWitt, a nurse practitioner by whom Officer had been treated, cleared Officer to return to work without restrictions. R.R. at 59a. At this point, Officer contends that he requested to be placed on administrative duty under Act 59 while he awaited a determination to be placed on active duty. *See* Union's Brief at 9. In any event, Chief Hanny explained that Officer would have to undergo another Fitness for Duty evaluation with Dr. Getz on April 11, 2023. R.R. at 57a-58a, 120a.

This time, Dr. Getz concluded that Officer would not pose a safety risk to himself or others if he returned to work; that cognitive, psychiatric or substance use problems would not prevent Officer from performing the essential functions of his job; and Dr. Getz no longer recommended further time off from work. R.R. at 126a-28a. While noting that the swift cessation of Officer's psychiatric symptom was "atypical," especially with "limited" outpatient treatment, Dr. Getz observed that this tended to confirm his earlier opinion that Officer's symptoms were over-reported or exaggerated. *Id*. at 126a. Importantly, in an addendum, Dr. Getz also opined that Officer did not suffer from PTSD. *Id*. at 130a.

While not in the record, Chief Hanny appears to have denied Officer's request to be placed on administrative duty under Act 59. The Union grieved the

5

denial in a letter dated May 12, 2023,[5] requesting that he be placed on administrative duty with full-pay, backdated to April 6, 2023. R.R. at 35a. In pertinent part, Chief Hanny's response denying the Union's grievance explained that Dr. Getz's reports indicated that Officer was not suffering from PTSD and that whatever mental health issues Officer had been suffering from were far outside the scope of Act 59, such that Officer was not entitled to be placed on administrative duty. *Id*. at 37a. The Union avers that on June 8, 2023, "the parties agreed to waive the additional grievance procedure steps and proceed immediately to arbitration on the Township's refusal to assign Officer [] to Act 59 administrative or full-time duty and pay him his salary." Union's Brief at 11.

However, in a letter dated June 6, 2023, the Township sent Officer a *Loudermill*[6] notice explaining that it was seeking to honorably discharge Officer from service under the Police Tenure Act. The notice indicated the hearing would take place on June 8, 2023. R.R. at 132a. Yet, the Township sent another *Loudermill* notice to Officer on July 14, 2023, for the same purpose. *Id*. at 134a.

The Arbitrator conducted a hearing on November 9, 2023, at which Officer, Chief Hanny, Dr. Getz, and another Township police officer testified. At the beginning of the hearing, the Arbitrator remarked: "I think I know what the issues are. We'll find out." Arbitrator's Hearing, N.T. at 9. The Township's Solicitor

---

[5] In the Union's view, this denial also served as a violation of Article XV of the CBA (non-discrimination). R.R. at 35a. The Union would later assert Chief Hanny possessed a bias against mental illness because Chief Hanny had expressed that Officer's eventual dismissal was a foregone conclusion given his psychiatric symptoms and his personal "disagreement" with Act 59. *See, e.g.*, Arbitrator's Hearing, N.T. at 87-88, 91-95; R.R. at 167a-68a.

[6] Referring to *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985) (requiring a public employee to be given notice and an opportunity to respond to any charges leveled against him in a formal hearing before being terminated).

proffered the grievance documents as the Township's Exhibit D during the direct examination of Chief Hanny. The Solicitor observed that the Union was grieving the Township's denial of Officer's request to be placed on administrative duty under Act 59 and Chief Hanny agreed that the subject of the grievance related to the same. *Id.*, N.T. at 31-32. Then, the Solicitor began asking the Chief questions about the second *Loudermill* notice (proffered as the Township's Exhibit E), like whether the Township voted to proceed with an honorable discharge under the Police Tenure Act. Chief Hanny stated that the Township's Board of Supervisors did vote to discharge Officer. *Id.*, N.T. at 31-32, 104.

On cross-examination, the Union's counsel (Union Counsel) asked Chief Hanny if any notice beyond that of the *Loudermill* hearing had been given to Officer. In other words, did the Township ever notify Officer of its decision to honorably discharge him? *See* Arbitrator's Hearing, N.T. at 105-07. Chief Hanny deferred to the Township's Solicitor who intervened. *Id.* He stated: "Under the [Police] Tenure Act . . . you have to give [the officer] notice and the right to a hearing and [Officer] chose to proceed with arbitration. That's what we are doing today. I don't understand the questioning." *Id.*, N.T. at 107. When Union Counsel asked the Chief whether he knew of the effective date of Officer's termination, the Solicitor objected: "[W]e treated [Union Counsel's] response to the [second *Loudermill* notice] as an indication that she was proceeding to arbitration on that issue rather than a hearing before the supervisors. So that's what we're doing today." *Id.*, N.T. at 108. Whatever Union Counsel's response was, it is not contained in either the Original or Reproduced Record. Further complicating matters, Union Counsel then asked Chief Hanny whether a letter she marked as July 14, 2023 indicated that Officer opted to proceed to arbitration on an unspecified issue. Due

7

to the Solicitor's interruption, the Chief never answered the question and Union Counsel moved on to a different exhibit. *Id*., N.T. at 108-09. The only letter marked July 14, 2023 in the Original or Reproduced Record is the second *Loudermill* notice.

To the extent that his testimony is relevant at this stage of the proceedings, Dr. Getz once again offered that he found his first examination of Officer difficult because he believed Officer was over reporting his symptoms, but that in both instances, he found that Officer did not suffer from PTSD. Arbitrator's Hearing, N.T. at 137-41,147, 150.[7]

The Arbitrator rendered his decision on February 29, 2024, identifying, without explanation, the following issues for his resolution: "Whether the Township was within [its] rights to remove [Officer] from service with an honorable discharge or whether the Township was required to place [Officer] on administrative duty with pay pending return to full duty. If not and if so, what shall the remedy be?" Arbitrator's Award at 4. Concerning Officer's request to be placed on administrative leave, the Arbitrator reasoned that Officer did not present any testimony or evidence that tended to suggest that he suffered from PTSD, while Dr. Getz affirmatively testified that Officer did *not* suffer from PTSD. Relying on this evidence, the Arbitrator concluded that the Township's obligations under Act 59[8] were not

_____

[7] For his part, Officer categorically denied ever relating to a fellow officer that he was hoping to pull over a Black driver to incite a racially motivated incident. Arbitrator's Hearing, N.T. at 215. He also testified that he did not recall telling one of his health care providers that he pulled over 15 drivers during a 45-minute period due to his anger. *Id*.

[8] Section 2 of Act 59 provides:

> A law enforcement officer shall be assigned to administrative duty
> if the law enforcement officer:

**(Footnote continued on next page…)**

triggered and Officer was not entitled to be placed on administrative duty. *Id*. at 6. Concerning the honorable discharge[9] issue, the Arbitrator found the Township's action to be reasonable in light of the extreme risk posed by Officer's psychiatric symptoms and the relatively non-extensive medical attention Officer received to treat the same. *Id*. at 7-8. Thus, the Arbitrator denied the Union's grievance without explaining his rationale for reaching the honorable discharge issue.

On March 24, 2024, the Township sent Officer a letter of termination wherein it explained that it had "officially" terminated Officer's employment as of March 4, 2024 – only a few days after the Arbitrator issued his award. R.R. at 48a. In a letter dated March 27, 2024, the Union forwarded the Petition to Vacate it had filed in trial court and grieved the Township's decision to terminate Officer's employment. *Id*. at 208a. In response, the Township stated that the honorable

---

> (1) fails to undergo a mental health evaluation for [PTSD] when required under subsection (a); or
>
> (2) is experiencing symptoms of [PTSD] under subsection (a) and whom the licensed physician has not yet determined is able to resume full duties under subsection (b).

44 Pa. C.S. §7203(c). Subsection (a) obligates a law enforcement agency to provide an evaluation for PTSD upon the law enforcement officer's request; upon recommendation of a supervisor; or within 30 days of an incident involving lethal force. *Id*. §7203(a).

[9] Section 2 of the Police Tenure Act provides in relevant part:

> No person employed as a regular full time police officer in any police department of any township of the second class . . . shall be suspended, removed or reduced in rank except for the following reasons: (1) physical or mental disability affecting his ability to continue in service in which case the person shall receive an honorable discharge from service . . . .

53 P.S. §812.

discharge issue had been duly adjudicated by the Arbitrator, such that the Township believed the Union's only remaining avenue for relief lies with its appeal in the trial court. *Id*. at 210a.

In the trial court, which denied the Union's Petition to Vacate, the Union asserted that the Arbitrator had exceeded his jurisdiction by reaching the honorable discharge issue and that the hearing had failed to comport with due process. In the trial court's estimation, the Union's argument on this point was "chock full o[f] flawed and erroneous factual predicates." Trial Court's Pa.R.A.P. 1925(a) Op. at 6. For example, the trial court faulted the Union for suggesting that it could not challenge Officer's termination given that he never had notice of the board of supervisor's vote as Officer had ample opportunity to voice that objection at the Arbitrator's hearing. *Id*. at 6-7. To the extent that the issue related to due process, the trial court considered it "preposterous" that the Union or Officer would have been unaware that the honorable discharge issue would be addressed at the Arbitrator's hearing because Officer received the second *Loudermill* notice. *Id*. at 5. In any case, the trial court believed that reaching the honorable discharge issue was logical because of the "interplay" between Act 59 and the Police Tenure Act. *Id*. The Union filed a timely notice of appeal in this Court thereafter.

## II. Issues

Before this Court, the Union once again asserts that, in reaching the honorable discharge issue, the Arbitrator (1) exceeded his jurisdiction; and (2) frustrated Officer's due process rights.

10

## III. Discussion

As our Supreme Court has explained, "[g]rievance arbitration is not specifically mentioned in Act 111[,[10]] as its language speaks only to the resolution of disputes arising from 'the collective bargaining process,' *i.e.*, interest arbitration." *Northern Berks Regional Police Commission v. Berks County Fraternal Order of Police, Lodge #71*, 230 A.3d 1022, 1033 (Pa. 2020). However, as held in *Chirico v. Board of Supervisors for Newton Township*, 470 A.2d 470, 474-75 (Pa. 1983), the scope of appellate review we employ in interest arbitration applies equally to grievance arbitration[11] – notwithstanding Act 111's preclusion of appeals. *North Berks Regional Police Commission*, 230 A.3d at 1033; *see also* 43 P.S. §217.7(a).

As such, "the scope of review applicable to Act 111 grievance arbitration appeals is settled: narrow *certiorari* review, which allows the [C]ourt to inquire into only four areas, obtains." *Town of McCandless v. McCandless Police Officers Association*, 901 A.2d 991, 997 (Pa. 2006). The four areas our inquiry may enter upon include: (1) the jurisdiction of the arbitrator; (2) the regularity of the proceedings; (3) whether the arbitrator exceeded her authority; and (4) whether there has been a deprivation of constitutional rights. *City of Philadelphia v. Fraternal Order of Police, Lodge No. 5*, 768 A.2d 291, 295 (Pa. 2001).

> [I]f the question of arbitrability turns upon a pure question
> of law or upon the application of law to undisputed facts,
> appellate review is plenary; but if arbitrability depends

---

[10] Act of June 24, 1968, P.L. 237, No. 111, *as amended*, 43 P.S. §§ 217.1-217.12.

[11] *See Michael G. Lutz Lodge No. 5, of Fraternal Order of Police v. City of Philadelphia*, 129 A.3d 1221, 1226 (Pa. 2015) ("Interest arbitration is, in essence, the process by which the parties, through a neutral arbitrator or panel, create a collective bargaining agreement. This process may be contrasted with grievance arbitration, in which the parties dispute the proper interpretation or application of provisions contained in an existing collective bargaining agreement.").

> upon fact-finding or an interpretation of the CBA, 'the extreme deference standard' governing Act 111 awards controls. In the latter instance the court is bound by the arbitrator's determination, even though it may be manifestly unreasonable.

*Town of McCandless*, 901 A.2d at 995. An arbitrator exceeds his jurisdiction when he addresses issues not properly submitted to him. *Borough of State College v. Borough of State College Police Association*, 303 A.3d 248, 255 (Pa. Cmwlth. 2023) (citing *City of Philadelphia v. Fraternal Order of Police, Lodge No. 5*, 181 A.3d 485 (Pa. Cmwlth. 2018)).

The Union advances a succinct argument on this point: although the Union grieved the Township's refusal to place Officer on administrative duty under Act 59, the Arbitrator nevertheless opined on the honorable discharge issue. Union's Brief at 21. Thus, the Union believes, the Arbitrator exceeded his jurisdiction by reaching an issue not submitted to him, nor one that the Union could have submitted to the Arbitrator given that the Township had not notified Officer of the result of the board of supervisors' vote. *Id*.

Like the trial court below, the Township sharply disagrees with this argument. The Township offers a variety of rationales for explaining how this issue was submitted to the Arbitrator: (1) Officer had to know of his termination because he received the July 14, 2023 notice of the second *Loudermill* hearing; (2) neither the Union nor Officer objected to the Arbitrator's jurisdiction at the November 9, 2023 hearing, and the Union did not raise the issue in a post-hearing brief; (3) the denial of administrative duty was "functionally identical" to the honorable discharge issue; and (4) but for the July 14, 2023 *Loudermill* notice, "there would be no inciting event for a grievance." Township's Brief at 15-19.

12

Here, the record before this Court supports that the Union submitted a single issue to the Arbitrator: whether the Township violated the CBA's prohibition against discrimination in denying Officer's request to be placed on administrative duty under Act 59. *See* R.R. at 35a-37a. The Arbitrator therefore plainly exceeded his jurisdiction by reaching the issue of honorable discharge. Likewise, neither the Township nor the trial court have offered a single cogent rationale for concluding that the Arbitrator possessed jurisdiction over the matter.

First, we are perplexed by the Townships' suggestion – and the trial court's endorsement of the same – that notice of a *Loudermill* hearing is somehow tantamount to notice of termination. The July 14, 2023 *Loudermill* notice did nothing to inform Officer or the Union of whether he had been honorably discharged from service, it only did that which it was designed to do: inform Officer that a *Loudermill* hearing on the subject of honorable discharge would take place. Further, this argument is all the more confusing given the procedural history that followed the Arbitrator's Award, namely, the Township's March 24, 2024 notice of termination.

Indeed, as the Union has argued, without notice of the Township's formal action concerning Officer's termination, it is difficult to conceive of how the Union would have complied with the CBA's requirement to provide the Township with written notice of the Union's desire to refer the matter for arbitration. R.R. at 7a-8a. The only plausible argument on this point would be that, following the July 14, 2023 letter, the Union and Officer waived the *Loudermill* hearing and the CBA procedures to proceed to arbitration as alluded to at the hearing. *See* Arbitrator's Hearing, N.T. at 108-09. But none of the alleged exhibits discussed therein are contained in the record before us, and, curiously, the Township ceased pursuing that

13

argument beyond the hearing. The Township's post-hearing brief to the Arbitrator observes that its Exhibit D contains the Act 59 grievance request, but asserts only that the second *Loudermill* notice conferred the jurisdiction over the honorable discharge issue upon the Arbitrator. R.R. at 187a-88a. The same is true concerning the Township's briefs in the trial court, *id.* at 266a-67a, and its brief in this Court. For whatever reason, then, the Township appears to have abandoned this argument.

Relatedly, the Solicitor's and Union Counsel's exchange on this subject at the Arbitrator's hearing disposes of the Township's second argument. However, even if the issue of the Arbitrator's jurisdiction was not as pervasive as it was throughout the proceedings, "[t]he issue of subject-matter jurisdiction cannot be waived and may be raised by the parties or by the court *sua sponte*." *Borough of Gettysburg v. Teamsters Local No. 776*, 103 A.3d 389, 397 (Pa. Cmwlth. 2014) (quotations omitted). Still, our reading of the transcript indicates that Union Counsel was challenging the scope of the proceeding by questioning Chief Hanny as to whether the Township had actually taken any action, or informed Officer of the same, that could serve to initiate a grievance relating to an honorable discharge. *See* Arbitrator's Hearing, N.T. at 105-07. The Union also pressed its argument that no formal Township action existed for Officer to grieve in its post-hearing brief to the Arbitrator, *see, e.g.*, R.R. at 172a n.22 ("The grievance in this case was filed on May 12, 2023, months before the Township argues its board or council acted."), and explicitly challenged the Arbitrator's jurisdiction over the issue in its Petition to Vacate and its brief to the trial court, *see* R.R. at 237a-38a, 256a-57a. It is also worth noting that the Union may have formally objected to the Arbitrator's jurisdiction over the issue had the Arbitrator clearly defined the issues at the beginning of the

14

hearing. *Again, see* Arbitrator's Hearing, N.T. at 9 ("I think I know what the issues are. We'll find out.").

To the extent the Township argues that the administrative duty and honorable discharge issues are "functionally identical," we observe that our Supreme Court has stated that an *interest* arbitration panel "may speak to an issue if it is reasonably subsumed within the issues properly before [it]." *Michael G. Lutz Lodge No. 5, of Fraternal Order of Police v. City of Philadelphia*, 129 A.3d 1221, 1231 (Pa. 2015). Still, it is not entirely clear that this precedent applies in grievance arbitrations,[12] and, in any case, the issues reached by the Arbitrator are neither functionally identical nor is one reasonably subsumed by the other.

While both Act 59 and the Police Tenure Act contemplate an officer's fitness for active service, the former ensures continued service in an administrative capacity while the latter provides for, *inter alia*, discharge. So too, the former's process is largely insular; the PTSD examination might be prompted by the officer himself or the police chief and the decision to place the officer on administrative duty depends upon a medical professional's opinion. *See* 44 Pa. C.S. §7203. Whereas the Police Tenure Act requires notice, a hearing, and a vote by the appointing authority, among other processes. *See* 53 P.S. §814. Regardless, even where there is shared subject matter, both pieces of legislation operate independently of one another. That is, contrary to the trial court's suggestion, there is no interplay between Act 59 and the Police Tenure Act. If an officer were to request an examination for PTSD and to be placed on administrative duty, but the evaluation did not render a PTSD diagnosis, no provision in either act would compel the municipality to seek discharge or a reduction in rank under the Police Tenure Act.

---

[12] *But see Borough of State College*, 303 A.3d at 257.

15

Hence, the issues are not functionally identical – and the Police Tenure Act is certainly not subsumed by Act 59 – such that the Arbitrator had jurisdiction beyond the single issue submitted to him.

The Township's final argument fares no better. Indeed, it was the Township who proffered Exhibit D at the Arbitrator's hearing. Exhibit D contained Officer's request to be placed on administrative duty and the Township's denial, *i.e.*, the grievance documents that initiated the arbitration in the first place. Arbitrator's Hearing, N.T. at 31-32; R.R. at 35a-37a. Because the issue of jurisdiction is dispositive, we need not reach the Union's due process arguments but note that the Union's argument on this point shares significant overlap with the jurisdiction issue anyway.[13]

## IV. Conclusion

Accordingly, the trial court's order is **REVERSED** in part and the matter is **REMANDED** to vacate the Arbitrator's award to the extent he exceeded his jurisdiction.

_____

MICHAEL H. WOJCIK, Judge

---

[13] Given the seriousness of this matter's factual background, we must stress that we have not undertaken this decision lightly. Indeed, in many respects, we commend the Township and Chief Hanny's dedication to treating an officer's mental illness while also ensuring the public's protection. But Act 111 arbitration panels are "bodies of *temporary* jurisdiction convened to respond quickly with absolute finality to a *specific labor conflict*, and then disperse." *City of Philadelphia v. Fraternal Order of Police, Lodge No. 5 (Jason Breary)*, 985 A.2d 1259, 1266 (Pa. 2009) (emphasis added). Given the record before us, however, we must conclude that the Arbitrator only had jurisdiction to address the Act 59 issues.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ohio Township Police Association,   :
                                            :
                    Appellant   :
                                            :
              v.                  :  No. 1695 C.D. 2024
                                            :
Ohio Township                    :

O R D E R

AND NOW, this 7th day of January, 2026, the November 16, 2024 Order of the Allegheny County Court of Common Pleas is **REVERSED** in part and **REMANDED** to vacate the February 29, 2024 arbitration award to the extent consistent with the foregoing Opinion.

Jurisdiction relinquished.

_____
MICHAEL H. WOJCIK, Judge