**CITY OF PHILADELPHIA, Appellant,**

v.

**FRATERNAL ORDER OF POLICE LODGE NO. 5.**

Commonwealth Court of Pennsylvania.

Argued Feb. 7, 1995.

Decided April 27, 1995.

As Amended May 4, 1995.

**454**

Mark J. Foley, Divisional Deputy City Sol., for appellant.

John R. O'Donnell, for appellee.

Before McGINLEY and PELLEGRINI, JJ., and LORD, Senior Judge.

McGINLEY, Judge.

The City of Philadelphia (City) appeals from an order of the Court of Common Pleas of Philadelphia County (common pleas court) which affirmed an arbitrator's award reinstating Thomas Duffy (Duffy) as a police officer in the Philadelphia Police Department (Department).

Duffy was employed by the Department for six and one-half years before he was discharged on May 31, 1987. Duffy was discharged for conduct unbecoming an officer due to his alleged participation in an assault on two pedestrians that occurred on May 17, 1987, while he was off-duty. The Department presented Duffy with a notice of intention to dismiss on May 21, 1987, which contained the following allegations:

> In that on or about Sunday, May 17, 1987 at approximately 1:26 A.M. while off-duty and inside a vehicle (PA Lic # DRM255, 1979 Oldsmobile, owned by James Duffy) in the vicinity of Broad and Spruce Streets, you, in the company of James Duffy, James and Joseph Lemly, Robert Sale and James Bescript, shouted obscenities, 'faggots, fuck you and asshole' out the vehicle windows at Mr. Carl Vetter and another male known only as Gary as the vehicle followed them slowly on Spruce Street.

> You and Mssrs [sic], Joseph Lemly and James Duffy exited the vehicle and started beating Mr. Vetter and Gary on the highway. Gary and Mr. Vetter broke loose and you, Joseph Lemly and James Duffy pursued Mr. Vetter into the lobby of the Hershey Hotel where you punched him in the neck, back, ribs and genitals. Hershey Hotel security officers Michael Daly and Salvatore Cavuto escorted you from the premises.

> Mr. Vetter was treated at the Hahnemann Hospital for multiple contusions, abrasions, soft tissue bruises and lacerations of his left elbow.

> Although your dismissal is based on the above substantive acts, on May 17, 1987 you were also arrested and charged with Aggravated Assault, Simple Assault, Recklessly Endangering Another Person, and Criminal Conspiracy.

> The aforementioned course of conduct indicates that you have little or no regard for your responsibilities as a member of the Philadelphia Police Department.

> You are hereby notified that you for the same reasons you [sic] are suspended without pay from your position effective at the

beginning of business on May 18, 1987, for thirty days, or until your prior dismissal. Memorandum of Law in Opposition to the Petition of the City of Philadelphia to Vacate Arbitration Award at 4–5 (quoting Notice of Intention to Dismiss, May 21, 1987); R.R. at 99a–100a.

Pursuant to the collective bargaining agreement between the City and the Fraternal Order of Police (FOP), the FOP submitted a grievance alleging that Duffy was discharged without just cause, in violation of the collective bargaining agreement. Hearings were held in the matter and the parties presented witnesses who testified to the May 17, 1987, incident. The arbitrator found that on May 17, 1987, at 1:30 A.M., after leaving a bachelor party, Duffy and five companions were travelling down Spruce Street in Philadelphia in a car which was being driven by Duffy. Based on the testimony presented, the arbitrator found that the following occurred:

> One or more of the occupants of the car became engaged in conversation with two pedestrians, Gary Seidel [ (Seidel) ] and Carl Vetter [ (Vetter) ], such conversation being comprised of verbal taunts and obscene sexual references. As the car continued on Spruce Street and crossed Broad Street, an altercation ensued near the median of Broad Street between Mr. Vetter, Mr. Seidel, and one or more occupants of the car. Mr. Seidel was physically struck by one of the car's occupants, and Mr. Vetter was chased by one or more of the car's occupants to the Hershey Hotel, hereinafter referred to as the "Hotel", located blocks away on Broad Street. Mr. Vetter ran into the Hotel and summoned help from the Hotel's staff. Shortly thereafter, one or more of the car's occupants entered the Hotel and physically beat Mr. Vetter. The Hotel's security personnel broke up this attack and escorted the attacker(s) out of the Hotel. Police later

stopped the car, being driven by [Duffy], and arrested its occupants.

Arbitrator's Decision, October 29, 1993, at 2–3; Reproduced Record (R.R.) at 12a–13a.

The arbitrator found that the City failed to meet its burden of adequately proving that Duffy participated in the assault. Based upon the testimony presented the arbitrator also found that "the grievant did not identify himself as a police officer or try to summon police assistance at any time during the incident, nor did he evidence any intent to make a written report of the incident once it had occurred." Arbitrator's Decision, October 29, 1993, at 25; R.R. at 35a. The arbitrator found that this conduct constituted "conduct unbecoming an officer", such conduct being less severe than alleged in the dismissal notice. Accordingly, the arbitrator reinstated Duffy as a police officer without back pay or benefits and with seniority unimpaired.

The City appealed the arbitrator's decision to the common pleas court which, in an opinion and order dated August 28, 1994, affirmed the arbitrator. The City appeals.

■■■ Where, as here, we are required to review an arbitrator's award in a case of grievance arbitration involving Act 111 [1] police personnel, our scope of review is narrow certiorari. *Pennsylvania State Police v. Pennsylvania State Troopers' Association (Betancourt)*, —— Pa. ——, 656 A.2d 83 (1995), *rev'g*, 159 Pa.Commonwealth Ct. 489, 633 A.2d 1278 (1993). The narrow certiorari scope of review limits a reviewing court to questions regarding: (1) the jurisdiction of the arbitrators; (2) the regularity of the proceedings; (3) an excess of the arbitrator's powers; and (4) deprivation of constitutional rights. *Id.* [2]

On appeal to this Court the City argues that the arbitrator's award was not derived from the essence of the collective bargaining

1. Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. §§ 217.1–217.10.

2. In *Betancourt*, three appeals from orders of this Court were consolidated for review before our Pennsylvania Supreme Court, all raising the issue of whether this Court applied the correct

scope of review in reviewing the Act 111 grievance arbitration awards. In a unanimous decision written by Justice Cappy, the Supreme Court concluded that this Court erred in the basic assumption that the Uniform Arbitration Act, 42 Pa.C.S. §§ 7301–7320, rather than Act 111, authorized grievance arbitration.

agreement,[3] and that the arbitrator applied an inappropriate burden of proof in reaching the award.

■ Initially, the City argues that the common pleas court committed an error of law in denying the petition to vacate the arbitration award. Specifically, the City asserts that Duffy was discharged for conduct unbecoming an officer. The City reasons that since the arbitrator found that Duffy committed conduct unbecoming an officer, albeit for different reasons than those for which he was discharged, then the arbitrator should have upheld Duffy's discharge. In other words, the City argues that the arbitrator exceeded his authority by imposing a lesser form of discipline after finding that Duffy's behavior constituted conduct unbecoming an officer. The FOP responds by arguing that the issue is moot because the City empowered the arbitrator to modify the remedy in accordance with his findings. The FOP bases this argument on the arbitrator's statement of the issue as being, "Did the City of Philadelphia discharge the grievant for just cause in accordance with the Collective Bargaining Agreement between the parties? If not, what should the remedy be?" Arbitrator's Decision, October 29, 1993, at 4; R.R. at 14a. The FOP argues that because the City did not specifically challenge the arbitrator's interpretation of the issue, then the City has waived its right to challenge his ability to fashion a new remedy.

Duffy was discharged for "conduct unbecoming" as defined in Section 1.75[4] of the Department's Disciplinary Code for his alleged participation in an assault. The arbitrator found that "it was neither conclusively proven nor disproved that the grievant himself was actively engaged in the assault of Mr. Vetter, and no testimony was offered by either party identifying the grievant as having assaulted Mr. Seidel." Arbitrator's Decision, October 29, 1993, at 24–25; R.R. at 34a–35a. Accordingly, the arbitrator concluded that just cause did not exist for Duffy's discharge on the grounds alleged by the City. Regardless, the City insists that the discharge should stand because the arbitrator found Duffy committed "conduct unbecoming an officer".

The arbitrator went beyond an examination of the charges put forth by the City and found, based on the testimony presented, that Duffy failed to prevent and report the assaults and that he failed to identify himself as a police officer, conduct not included in the dismissal notice. The arbitrator looked to Section 4.01 of the Department's Disciplinary Code for guidance in his examination.[5] The arbitrator concluded that Duffy's neglect and nonperformance of these duties constituted "conduct unbecoming an officer". The "unbecoming conduct" which the arbitrator found Duffy committed, however, was not the same alleged conduct that led to his discharge.[6] Because it was the arbitrator's prerogative to accept or reject testimony and evaluate credibility the arbitrator properly found that Duffy did not commit the acts the City alleged and correctly concluded there was no just cause for discharge. In *Betancourt* our Pennsylvania Supreme Court reiterated the premise that while the legisla-

---

3. Because of *Betancourt,* we will construe the City's argument as a challenge to the authority of the arbitrator under the narrow certiorari scope of review.

4. Section 1.75 of the Department's Disciplinary Code states:

   *Article I—CONDUCT UNBECOMING AN OFFICER*

   .    .    .    .    .

   Section: 1.75: Charge: Repeated violations of departmental rules and regulations, and/or any other course of conduct indicating that a member has little or no regard for his responsibility as a member of the Police Department; 1st Offense: 30 days to dismissal; 2nd Offense: Dismissal.

5. Section 4.01 of the Department's Disciplinary Code states:

   *ARTICLE IV—NEGLECT OF DUTY*
   Section: 4.01: Charge: Failure to take police action, on or off duty, in or out of uniform, and/or failure to make the required written report; 1st Offense: Reprimand to 10 days; 2nd Offense: 10 to 30 days; 3rd Offense: 15 days to Dismissal; Reckoning Period, 2 years.

6. Neither party argues that this action by the arbitrator was an error. Our review is limited to whether the arbitrator exceeded his authority in finding that just cause did not exist for Duffy's discharge for physically assaulting the pedestrians.

ture's intent was to prevent Act 111 arbitration from miring down in litigation, an arbitrator's powers are limited and an award may not address issues beyond the terms and conditions of employment and an arbitrator may only require a public employer to do what it could do voluntarily. The Supreme Court concluded that each of the arbitrators had the authority to reinstate the discharged Pennsylvania State Troopers and expunge the record of the third. Here, we must conclude that the arbitrator properly reinstated Duffy without back pay after concluding that he did not participate in the assaults. Such a determination was within the arbitrator's authority and, accordingly, the City's argument must fail.

▮ Next, the City argues that the arbitrator utilized a "conclusive" burden of proof, inappropriate in labor situations. We find this argument meritless. An examination of the arbitrator's decision reveals that a "conclusive" burden of proof was not used. Further, beyond raising the issue, the City fails to direct this Court to any part of the decision which would suggest that such a burden of proof was used. The arbitrator found that "the City has failed to meet its burden of proof since the acts for which the grievant was discharged were not *sufficiently* shown to have been committed and the severity of the resulting discipline imposed was therefore inappropriate." Arbitrator's Decision, October 29, 1993, at 24; R.R. at 34a. (Emphasis added). Accordingly, the City's second argument fails.

We affirm.[7]

### ORDER

AND NOW, to wit, this 27th day of April, 1995, the decision of the Court of Common Pleas of Philadelphia County at No. 3955 of November Term 1993, and dated August 28, 1994, is affirmed.

PELLEGRINI, Judge, concurring.

I concur with the majority insofar as it holds that, under the narrow certiorari test, our scope of review is so narrow that we cannot reverse the arbitrator's decision that

found that Duffy should not be discharged even though he found that he took no action when he and his companions engaged in "gay bashing" over several blocks of the city and that he served as the "wheel man" in the incident.

I disagree, however, that if this case was decided under "the essence test" the result would be the same. If the Supreme Court in *Pennsylvania State Police (Bentancourt) v. Pennsylvania State Troopers' Association (Betancourt)*, —— Pa. ——, 656 A.2d 83 (1995), *reversing* 159 Pa.Commonwealth Ct. 489, 633 A.2d 1278 (1993), had adopted the essence test, we could have reviewed the arbitrator's standard in the same manner we would review a trial court decision. The arbitrator's outcome was so egregious that it would have fallen within "against the public interest" exception set forth in *Pennsylvania Liquor Control Board v. Independent State Stores Union*, 520 Pa. 266, 553 A.2d 948 (1989) (award was not rationally derived from CBA where arbitrator found grievant guilty of theft and other crimes against the employer, but considered other factors in mitigation in determining that there was no "just cause" for his discharge and substituted a lesser penalty); *County of Centre v. Musser*, 519 Pa. 380, 548 A.2d 1194 (1988) (award was not rationally derived from CBA which clearly retained employer's right to determine appropriate punishment for serious misconduct, and arbitrator found grievants to have engaged in charged abusive conduct to an inmate of the prison, including assaultive behavior, but arbitrator considered certain mitigating factors to find no "just cause" for dismissal and substituted a lesser penalty); *Philadelphia Housing Authority v. Union of Security Officers*, 500 Pa. 213, 455 A.2d 625 (1983) (award was not rationally derived from CBA where arbitrator found grievant has committed crime of fraud against one of employer's tenants, but found no "just cause" for dismissal and substituted a lesser penalty); *Manheim Central Education Ass'n. v. Manheim Central School District*, 132 Pa.Commonwealth Ct. 94, 572 A.2d 31, *petition for allowance of appeal denied*, 525 Pa.

---

7. We note that the City has presented its arguments under the "essence test". This Court's

conclusion would not differ had we used such an analysis.

661, 582 A.2d 326 (1990) (award was not rationally derived from CBA where arbitrator found charged immoral conduct of grievant to have occurred, but found no "just cause" for dismissal and substituted a lesser penalty). The Arbitrator's failure to terminate a police officer based on these facts is certainly against the public interest and not rational.

It is ironic that we can review arbitrators' decisions as being against public interest that relate to clerks and typists, but not police officers. While certainly expedient, adopting the narrow certiorari test makes arbitrators unaccountable to anyone on whether their decisions are at all rational. Because of the Supreme Court's decision in *Betancourt* adopting the narrow certiorari test, I am forced to concur.