IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Pittsburgh,                          :
                          Appellant          :
                                             :
            v.                               :    No. 456 C.D. 2025
                                             :    Argued:  March 3, 2026
Fraternal Order of Police, Fort Pitt         :
Lodge No. 1 (Brian Elledge - Transfer)       :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
PRESIDENT JUDGE COHN JUBELIRER          FILED:  May 7, 2026

The City of Pittsburgh (City) appeals from the March 10, 2025 Order of the Court of Common Pleas of Allegheny County (trial court), denying the City's statutory appeal and affirming the July 5, 2024 Opinion and Award (Award) of an arbitrator (Arbitrator) in favor of Sergeant Brian Elledge (Grievant) pursuant to the Policemen and Firemen Collective Bargaining Act, Act of June 24, 1968, P.L. 237, No. 111, *as amended*, 43 P.S. §§ 217.1-217.12, commonly known as Act 111.[1]  On appeal, the City argues the trial court erred in affirming the Award because

---

[1] Section 1 of Act 111 provides:

Police or firemen employed by a political subdivision of the Commonwealth or by the Commonwealth shall . . . have the right to bargain collectively with their public employers concerning the terms and conditions of their employment, including compensation, hours, working conditions, retirement, pensions and other benefits, and shall have the right to an adjustment or settlement of their grievances or disputes in accordance with the terms of [Act 111].

43 P.S. § 217.1.

Arbitrator exceeded his jurisdiction and/or authority by deciding issues not within the scope of the grievance or submitted to him and by disregarding, adding, or modifying terms to the Collective Bargaining Agreement (CBA) between the City and the Fraternal Order of Police, Fort Pitt Lodge No. 1 (Union). Upon review, we discern no error by the trial court's upholding the Award under the narrow certiorari scope of review in this Act 111 case, and, therefore, we affirm.

## I.    BACKGROUND

The Union is the exclusive bargaining representative of all police officers in the City's Bureau of Police (Bureau) below the rank of Commander. The City and the Union are parties to a CBA, which governs the terms and conditions of employment of Bureau officers, including Grievant. At issue in this appeal is the CBA in place from January 1, 2019, to December 31, 2022, which was in effect at the time of the grievance and when the Award was issued.[2] (Reproduced Record (R.R.) at 360a.)

The facts in this matter are largely undisputed. Grievant worked as a night-shift supervisor in the traffic unit of the Special Deployment Division (SDD), which is the motorcycle unit. On March 31, 2023, Master Patrol Officer Larry Crawford (Officer Crawford) filed a complaint against Grievant asserting that Grievant was discriminating against Officer Crawford. A discrimination, harassment, and retaliation investigation (DHR investigation) occurred as a result of the complaint, but a disciplinary action report (DAR) charging Grievant with violating the Bureau's No Discrimination/No Harassment/No Retaliation Policy based on that investigation was not filed until July 9, 2023. Grievant was directed to not have contact with

---

[2] The parties modified and amended that agreement into a new CBA with a term of January 1, 2023, to December 31, 2025.

2

Officer Crawford in July 2023, but, on July 7, 2023, Grievant sent a group text message that included Officer Crawford that stated: "That's our pm. F[***] a[****] Larry crying about doing some work. Hope you get my job. I might retire." (*Id.* at 552a, 558a.) Following a meeting, the Chief of Police (Chief) recommended that the charges set forth in the DAR be **withdrawn** because the DHR investigation was **not properly performed**, and the charges were **withdrawn** on August 4, 2023. However, three days later, on August 7, 2023, a separate DAR was filed against Grievant based on the July 7, 2023 text message. Grievant received an **oral reprimand** as discipline on September 14, 2023, **which Grievant accepted and did not grieve**.

While the above process was ongoing, the following also occurred. On July 7, 2023, Grievant was notified that he was going to be **transferred** to Zone 5, effective July 24, 2023, but was not given any written explanation. Then, four days later, on July 11, 2023, Grievant was **immediately transferred** to Zone 4, again without written explanation. On July 12, 2023, the Union filed a grievance on Grievant's behalf, asserting the following: (1) Grievant was transferred from his exempt position "without written explanation or any notice of his position being eliminated, reduced, or reorganized" thereby violating Section 3 of the CBA; (2) the DHR investigation "intentionally violated" "every single contractual right surrounding [Grievant's] due process rights;" and (3) Grievant "received De Facto Discipline without receiving Due Process or full adjudication of his case" as required by Section 21(D)(11) of the CBA. (*Id.* at 536a.)

The City filed its step I reply on August 2, 2023, in which the Chief explained Grievant had been transferred pursuant to the "managerial prerogative provided in the CBA Section 3 Transfers and Reassignments." (*Id.* at 537a.) A step II meeting

3

was held on September 8, 2023. The City's Public Safety Director (Director) issued a letter on September 29, 2023, stating the City's position was that Grievant "displayed outward hostility toward an officer he directly supervises, violating general rule[s] 16-01[] [and] 3.8.2," and that Grievant's "immediate transfer . . . was warranted due to the [B]ureau's fear for [Officer] Crawford's immediate safety and healthy work environment." (*Id.* at 533a.) The Union did not agree, and, therefore, an impasse occurred on the grievance, and arbitration was demanded.

Two hearings were held, followed by written argument. Because the parties disagreed as to how to frame the issue before him, Arbitrator framed the issue as: "Whether the City . . . violated Section 3(E)(4) [of] the parties['] [CBA] by the assignment transfer of [Grievant]. And, if so, what shall the remedy be?" (Award at 5.) Both Grievant and the City presented evidence in support of their positions.

Lieutenant Charles Henderson, who supervised both Grievant and Officer Crawford, testified on behalf of Grievant. Lieutenant Henderson stated that Officer Crawford was a poor employee, who was often late to work, complained about assignments repeatedly, and had an inadequate number of stops. (R.R. at 96a-97a.) The City objected to testimony regarding Officer Crawford's work performance, as it involved an issue being raised for the first time at the arbitration hearing, which Arbitrator overruled. (*Id.* at 86a-89a, 96a-97a.) Lieutenant Henderson stated that Grievant, in contrast, was stern and had high expectations. (*Id.* at 106a-107a.)

Commander Raymond Rippole, who is not in Grievant's bargaining unit and is considered management, testified on Grievant's behalf and stated that he worked with both individuals as the Commander of the SDD and spoke highly of Grievant and less so of Officer Crawford. (*Id.* at 159a-60a, 166a-67a.) During his tenure as Commander of the SDD in July 2023, Commander Rippole did not receive any

4

complaints regarding the interactions between Grievant and Officer Crawford other than from Officer Crawford.

Grievant testified that he learned he was being transferred on July 11, 2023, via email and was not provided an explanation for the transfer until later. (*Id.* at 181a-82a.) He believed the transfer was discipline for Officer Crawford's complaint and was not told it was for the good of the Bureau until after the Union filed the grievance. (*Id.* at 182a.) Grievant acknowledged being told not to contact Officer Crawford in July 2023, and he explained that the July 7, 2023 text was not intended to include Officer Crawford but was accidentally sent to the wrong text chain. (*Id.* at 184a, 187a-88a.) Grievant stated he had no issues with Officer Crawford other than Officer Crawford's work ethic, he did not treat Officer Crawford differently than others, and he filed a negative employee performance report on Officer Crawford in 2021 but would have offered to mentor him or offered other assignments as a result. (*Id.* at 184a-86a.) Grievant described his financial losses due to being transferred and his desire to return to traffic duty in the SDD. (*Id.* at 195a-97a, 217a-20a.)

Robert Swartzwelder, President of the Union (President), testified about the decision to file the grievance, stating that normally the Union does not file grievances from a transfer, but the circumstances here were different. (*Id.* at 221a.) In this instance, the Union filed the grievance because it believed that Grievant's transfer was a de facto disciplinary transfer, which violated the CBA. (*Id.*) President believed the catalyst for Grievant's transfer was the improperly conducted DHR investigation, which could not be used to discipline Grievant. (*Id.* at 224a-27a.) He disagreed that transferring Grievant, a well-respected sergeant, was for the good of the Bureau. (*Id.* at 236a-37a.)

5

Officer Crawford testified on the City's behalf, stating he believed he was receiving unfavorable or bad assignments more often than other officers, including an assignment relating to the intoxilyzer, which Officer Crawford considered undesirable because they were inconvenient and unequally assigned. (Award at 7-8; R.R. at 276a-78a.) According to Officer Crawford, other sergeants were more flexible and did not micromanage, as Grievant did, and Grievant was assigning Officer Crawford bad assignments because Grievant "had an ax to grind." (Award at 7; R.R. at 278a.)

The Chief testified that his position required him to ensure that officers had a good working environment and, to make sure that the SDD traffic unit was a productive and safe working environment, a different supervisor was needed, resulting in Grievant's transfer and another individual being assigned supervisor of that unit. (Award at 7.) Grievant's transfer, the Chief explained, was because numerous complaints were made by officers working in the SDD traffic unit during the DHR investigation. (*Id.* at 8.) While the Chief agreed that the DHR investigation and report could be considered "flawed," because "it was unfairly obtained against [Grievant]" and could **not** be used to discipline Grievant, he believed he could pursue other remedies against Grievant, including transferring Grievant to a different unit. (R.R. at 322a-23a.) The Chief maintained that Grievant's transfer was for the good of the Bureau based on the facts that the DHR unit had sustained a discrimination complaint by Officer Crawford and that the transfer could limit the City's potential liability for allowing a hostile work environment. (*Id.* at 303a-09a, 323a-24a, 326a.)

Officer Dale Ruble, who worked on Officer Crawford's shift, testified on behalf of the City. Although he did not recall Grievant assigning Officer Crawford

6

undesirable duties, Officer Ruble asserted that he had heard Grievant make one racial comment relating to Juneteenth, an assertion Grievant denied. (Award at 9.) Officer Ruble did not recall when the statement was made, or what year it was made, and did not report the statement to the Bureau or the DHR unit. (*Id.*) Arbitrator did not find Officer Ruble's testimony regarding the alleged statement credible. (*Id.*)[3]

The Union argued to Arbitrator that it normally did not grieve involuntary transfers, but this transfer was egregious and involved Grievant being transferred to a less desirable position without just cause thereby violating Section 3(E)(4) of the CBA. The Union sought Grievant's return to his prior position in the SDD, and an award of back pay for overtime lost, shift differential, secondary employment, and statutory interest. The City posited that there was no violation of the CBA because it is within the City's management prerogative to transfer individuals when such transfers are for the good of the Bureau, as set forth in the CBA. The City maintained that because the transfer decision fell within the City's managerial prerogatives, the grievance had to be dismissed because the Chief's decision was reasonable under the circumstances, the Union did not establish any violation of the CBA, and any claim for losses by Grievant was not supported by the record.

Arbitrator issued the Award on July 5, 2024. In the Award, Arbitrator observed that numerous issues were raised and discussed at the hearings and in post-hearing submissions and that he had been asked to interpret the CBA's language to determine whether the City violated Section 3(E)(4) by Grievant's assignment transfer. (Award at 6.) Section 3(E)(4) provides relevantly that "Employees may be transferred by the Chief, or their Commander, either temporarily or permanently,

---

[3] The City also introduced the testimony of a Human Resources representative who was involved in the DHR investigation into Officer Crawford's complaint, the charges from which were ultimately withdrawn. (R.R. at 248a-58a.)

7

to another shift or station for the good of the Bureau," "where events or circumstances, jeopardize the ability of the officers to safely perform the duties of their position, including pending litigation or disciplinary action." (R.R. at 377a.) The issue, Arbitrator concluded, was "a straightforward matter of contract interpretation" and that the "rights provided to management under [the CBA] are afforded to management as long as such decisions are not made in an arbitrary, capricious or unreasonable manner." (Award at 6-7.)

Acknowledging that the Union bore the burden of proving that a violation of the CBA occurred, Arbitrator explained that once the basis of Grievant's transfer was challenged, the City had to show that the transfer was for the good of the Bureau. (*Id.* at 9.) In short, the City had to establish that there was a legitimate basis for the transfer. (*Id.*) Arbitrator concluded that the record revealed no evidence that could support the claimed good for the Bureau defense. (*Id.*) Citing evidence that the DHR investigation was flawed, that Officer Crawford's claims were not corroborated or substantiated, and that Grievant was a "stern and demanding" supervisor, which did not necessarily make him a bad supervisor, Arbitrator concluded that none of the evidence established that Grievant's "effectiveness as a supervisor or the safety of the [SDD] Unit was in any way compromised by [his] being stern and demanding[.]" (*Id.*) Rather, the evidence showed only that Grievant "maintained a unit with high expectations." (*Id.*)

Arbitrator concluded that:

> For all intents and purposes[,] the decision to transfer [Grievant] predicated on "for the good of the Bureau" was apparently and otherwise pretext behind disciplinary motives where just cause could not be proven.

8

The basis and the reasons for [] Grievant's transfer was for unsupported allegations which were decided and made in an arbitrary, capricious and unreasonable manner.

The testimony and evidence provided and given at the Hearings and the evidence provided in each [parties'] closing submission[s] supports the[ ] above conclusion.

(*Id.* at 10.)

Arbitrator granted the grievance and ordered the City to return Grievant to his prior position, with all of his rights and privileges associated therewith. (*Id.*) The City also was directed to make "Grievant whole for any and all loss of earnings incurred with respect to his regular wages which includes shift differential and any benefits that may have been affected by the transfer." (*Id.*) Arbitrator denied Grievant's request for payments for lost overtime and secondary opportunities due to a lack of proof supporting that relief. (*Id.*)

The City filed its statutory appeal seeking vacation of the Award, alleging that Arbitrator exceeded his jurisdiction and authority. On March 10, 2025, the trial court denied the City's statutory appeal and affirmed the Award. The City appealed to this Court, and, after the City filed a Concise Statement of Errors Complained of on Appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), Pa.R.A.P. 1925(b), the trial court issued an opinion explaining its reasoning. Therein, the trial court explained that Arbitrator did not exceed his jurisdiction or authority, reasoning as follows:

In an Act 111 arbitration, an arbitrator has jurisdiction over "the class of disputes arising out of a CBA between a public employer and its firefighters or police employees, rationally related to the terms and conditions of their employment." *City of Arnold v. Wage Policy Comm*[.] *of City of Arnold Police Dep*[']*t*, 171 A.3d 744, 750 (Pa. 2017). Section 3(E)(4) of the parties' CBA specifically addresses transfers within the Bureau and therefore is squarely within the arbitrator's jurisdiction to hear a grievance related to a transfer and

9

whether it was "for the good of the [B]ureau." "As long as an arbitrator's award concerns terms and conditions of employment and does not require performance of an illegal act, or one that a party could not do voluntarily . . . " an arbitrator has not exceeded his authority. *City of Pittsburgh v. Fraternal Ord*[.] *of Police, Fort Pitt Lodge No. 1*, 224 A.3d 702, 712 ([Pa.] 2020). Here, Arbitrator['s] [] award concerned the terms and conditions of [Grievant's] employment by addressing whether his transfer was actually "for the good of the [B]ureau" and was not a pretext for avoiding going through the proper disciplinary channels in the CBA and did not order the City to perform an illegal act or do something that it could not voluntarily do; therefore[,] he did not exceed his authority or "powers." Regarding the City's allegation that the arbitration award violated its managerial prerogative, managerial prerogative is a concept in interest arbitration used to determine whether an issue is a mandatory topic of collective bargaining. *City of Philadelphia v. Int*[']*l Ass*[']*n of Firefighters, Loc*[.] *22*, 999 A.2d 555, 569-70 (Pa. 2010). Therefore, the inclusion of transfers in the CBA means that these decisions are not solely "managerial prerogative" and are not immune to grievance arbitration if they are not executed according to the standards established in the CBA.

(R.R. at 37a-37a.1.)

Next, the trial court rejected the City's contention that Arbitrator exceeded his jurisdiction and authority by basing the Award on "new issues raised for the first time at arbitration and properly objected to by [the City]." (*Id.* at 37a.1.) The trial court presumed that this argument related to the reference to the issues with the DHR investigation and report, which Arbitrator referred to as "flawed." (*Id.*) According to the trial court, Grievant's

grievance strongly challenge[d] the DHR investigation, how it was conducted and argued that his due process rights were violated in the investigation. . . . In addition to the DHR investigation being explicitly challenged in the grievance, the City's own witness, [the] Chief . . . **acknowledged** that the investigation **could not be** the basis for discipline. ([R.R. at 323a.])[] Further, Counsel for **the City admitted** that the DHR was a part of the reason for [Grievant's] transfer. ([*Id.* at

113a.])[]    Therefore, the issues with the DHR investigation were properly before [] [A]rbitrator[.]

(*Id.* at 37a.1-38a (emphasis added).)

Last, the trial court rejected the City's contention that the trial court "erred by giving extreme deference to [] [A]rbitrator's remedy award where the parties did not place the remedy issue before" Arbitrator.  (*Id.* at 38a (internal quotation marks omitted).)  The trial court reasoned that

> [w]hen an arbitration award "depends upon fact-finding or upon interpretation of the [CBA], we apply the extreme standard of deference applicable to Act 111 awards. . . ."  *P*[*a.*] *State Police v. P*[*a.*] *State Troopers Ass'n*, 840 A.2d 1059, 1062 (Pa. [Cmwlth.] [] 2004).  [Grievant's] grievance requested a remedy.  This grievance involved [] [A]rbitrator's interpretation of the CBA section regarding transfers within the [B]ureau and making a factual determination of whether the transfer was "for the good of the [B]ureau."  Therefore, the remedy award was properly before [A]rbitrator and is entitled to extreme deference.

(*Id.*)[4]

## II. DISCUSSION
### *A. The Parties' Arguments*

The City argues Arbitrator exceeded his jurisdiction and authority for multiple reasons and, therefore, the trial court erred in not vacating the Award.  The City asserts Arbitrator exceeded his jurisdiction by allowing the Union to introduce new issues and evidence at the arbitration hearing, over the City's objection, and then based the Award on those issues and that evidence.  Per precedent, the City maintains, when an arbitrator addresses a question not submitted to arbitration, the arbitrator exceeds their jurisdiction because "Act 111 requires that both parties have

---

[4] The City did not include any arguments in its appellate brief to this Court on this issue and, therefore, that issue is not before the Court.

11

advance notice of the issues which are at stake." *In re Arb. Award Between Yoder Twp. Police & Lower Yoder Township*, 654 A.2d 651, 654 (Pa. Cmwlth. 1995). The City asserts that the Union's arguments during the grievance process sought revocation of Grievant's transfer due to procedural defects in the DHR investigation, asserted Grievant was entitled to the protections related to employee discipline, and claims the City violated a different provision of Section 3 in transferring Grievant. (The City's Brief (Br.) at 22 (citing R.R. at 501a, 536a).) According to the City, the Union **changed its arguments** before Arbitrator, challenging, "for the first time, . . . the validity of the DHR [] investigation and Office[r] Crawford's work performance" by introducing evidence that had not been presented at the earlier grievance procedure. (*Id.* at 22-23.) The City argues that, in granting the grievance, Arbitrator focused on these issues, rather than on the Chief's explanations as to why the transfer was for the good of the Bureau, demonstrating that Arbitrator did not consider the grievance as presented in the earlier grievance procedure, as required by Section 5(C)(3) of the CBA. (*Id.* at 24 (citing R.R. at 383a).)

The City further argues that Arbitrator exceeded his authority by adding to or modifying the CBA as it relates to the City's managerial prerogative in transfers it believes are for the good of the Bureau per Sections 3(E)(4) and 4 of the CBA. The Chief, the City argues, "has the exclusive authority to transfer an employee for the good of the [B]ureau," and "[i]f it is not shown that the [] Chief's reasons for the transfer [are] not for the good of the [B]ureau, the arbitrator exceeds their authority by invalidating the [] Chief's action." (*Id.* at 25-26.) Citing the Chief's testimony that supported transferring Grievant, the City maintains there was evidence showing that Grievant's transfer did not violate Section 3(E)(4) of the CBA and that Arbitrator's contrary conclusion modified the unambiguous terms thereof. (*Id.* at

12

28-30.) Finally, the City maintains that Arbitrator altered the CBA by finding that the Chief's transfer of Grievant "was a pretext for disciplinary action that could not be proven" and that a transfer is only possible when discipline can be proven. (*Id.*)

The Union argues that the City's arguments reflect its disagreement with Arbitrator's factual findings and interpretations of the CBA, both of which are to be afforded extreme deference. (Union's Br. at 20 (citing *Pa. State Police*, 840 A.2d at 1062).) It asserts Arbitrator did not exceed his jurisdiction or authority because the issue, the interpretation of Section 3(E)(4) and dispute over whether the City acted in compliance with that provision when it transferred Grievant, plainly falls under what may be grieved pursuant to Section 5(B) of the CBA and was encompassed by its demand for arbitration. (*Id.* at 20-25.) The Union contends it was entitled to present evidence that was relevant and material to the dispute, which included the DHR investigation and report, because they were relied upon by the Chief and the City in justifying Grievant's transfer. (*Id.* at 25.) Arbitrator's consideration of that evidence, and his determination that the DHR investigation was "flawed," was a factual finding based on a credibility determination, and, therefore, is entitled to great deference upon judicial review. (*Id.* at 25-26.) As for the evidence relating to Officer Crawford's work ethic, the Union argues this evidence was the City's own documents, was encompassed in the grievance because it was offered in Grievant's defense (that his comment in the text message was not racially motivated) and was to show that the transfer was disciplinary in nature (not in accord with Section 3(E)(4)). (*Id.* at 29.) It notes Arbitrator gave the City the opportunity to review and rebut the evidence. (*Id.* at 27.)

As for the alleged infringement on the City's managerial prerogative and alteration of the CBA's terms, the Union maintains that no such infringement

13

occurred because, while Section 4 of the CBA purports to give the exclusive authority to the City to transfer officers, Section 3(E)(4) imposes limitations on that authority. (*Id.* at 41-45.) According to the Union, Arbitrator did not infringe upon a managerial prerogative or alter the CBA's terms but acted within his authority to consider the evidence presented that was relevant to the issue before him—the interpretation of Section 3(E)(4) and whether Grievant's transfer complied with that provision. (*Id.*) These factual findings did not nullify any management rights, as prohibited by Section 5(C)(3)(b) of the CBA, or add or change the terms of the CBA, but were the result of Arbitrator's interpretation of the CBA and evidence, both of which are entitled to extreme deference. (*Id.* at 45.) The Union also argues that Arbitrator did not exceed his authority because the Award encompassed the terms and conditions of Grievant's working conditions and did not order an illegal action or for the City to do something it could not do voluntarily.

The City replies that the Union misrepresents certain relevant facts, including the dates of Grievant's actual transfer, suggesting that multiple transfers took place when the initial transfer to Zone 5 was not effective until July 24, 2023, and the operative transfer was the July 11, 2023 transfer to Zone 4, which was effective immediately. (The City's Reply Br. at 3; R.R. at 550a-51a.) The City further challenges the Union's repeated references to Grievant's transfer as being disciplinary in nature and, thus, requiring just cause, observing that transfers are not subject to a "just cause" analysis. (The City's Reply Br. at 6-7.) The City disputes the Union's contention that it is challenging Arbitrator's fact-finding and interpretation of the CBA's provisions, maintaining that its arguments focus on Arbitrator's jurisdiction and authority, both of which are reviewable under narrow certiorari review. (*Id.* at 8-9.) It reiterates its arguments regarding the raising of

14

new issues and presenting new evidence before Arbitrator and that Arbitrator exceeded his jurisdiction and authority by accepting and relying on that evidence and those issues. (*Id.* at 9-10 (citing R.R. at 380a, 382a).) That the Union referenced "collateral issues relating to the DHR investigation" did not grant Arbitrator the jurisdiction "to conduct a de novo review of the trustworthiness or credibility of the DHR Unit's findings." (*Id.* at 14.) Finally, the City argues it is not asserting an absolute managerial right to transfer employees, agreeing that Section 3(E)(4) limits its rights, but that Arbitrator exceeded his authority by eliminating or modifying the discretion afforded to the Chief by ignoring the Chief's explanations as to why the transfer met that standard. (*Id.* at 15-17.)

*B. Analysis*

"[J]udicial review of any Act 111 arbitration award, whether an interest or grievance award, is limited to narrow certiorari." *City of Pittsburgh v. Fraternal Ord. of Police, Fort Pitt Lodge No. 1*, 111 A.3d 794, 800 (Pa. Cmwlth. 2015). This means that a court may consider only four issues relating to an Act 111 award: (1) the arbitrator's jurisdiction; (2) the regularity of the proceedings; (3) whether the arbitrator exceeded his or her authority; and (4) whether there was a deprivation of constitutional rights. *Pa. State Police v. Pa. State Troopers' Ass'n (Betancourt)*, 656 A.2d 83, 89-90 (Pa. 1995). If an arbitration award cannot be vacated on one of these bases, then it must be upheld. *Id.* A mere error of law is insufficient to support the reversal of an Act 111 award. *In re Appeal of Upper Providence Police Del. Cnty. Lodge #27 Fraternal Ord. of Police*, 526 A.2d 315, 322 (Pa. 1987).

Moreover,

> as long as an arbitrator's award concerns terms and conditions of employment and does not require performance of an illegal act, or one that a party could not do voluntarily, the "authority" prong of narrow

15

certiorari is "generally met." An argument that an arbitrator misinterpreted a CBA is not within the confines of the narrow certiorari review. This Court's scope of review is a "plenary, non-deferential standard where the resolution of the issues turns on a question of law or application of law to undisputed facts."

*Borough of State College v. Borough of State Coll. Police Ass'n*, 303 A.3d 248, 255 (Pa. Cmwlth. 2023) (citations omitted). "[W]here [an arbitration award] depends upon fact-finding or upon interpretation of the collective bargaining agreement, we apply the extreme standard of deference applicable to Act 111 awards; that is, we are bound by the arbitrator's determination of these matters even though we may find them to be incorrect." *Pa. State Police*, 840 A.2d at 1062.

We begin with the relevant provisions of the CBA. Section 5(B) of the CBA defines "grievance" to include **complaints** by either an employee or the Union "**regarding the interpretation or application of, or compliance with th[e] [CBA]**." (R.R. at 380a (emphasis added).) Under Sections 5(C)(1)(f) and 5(C)(3)(b), respectively, the arbitrator "retain[s] the sole discretion on admission of the documents for evidentiary purposes at the arbitration hearing" but "shall not . . . add to, subtract from, modify, or disregard any of the terms or provisions of the [CBA]." (*Id.* at 382a, 384a.)

Section 3 of the CBA, entitled "Seniority," addresses, among other topics, the removal of employees from exempt positions, subsection (D)(3), and the **transfer** of employees, subsection (E)(4). These subsections state, in pertinent part:

[(D)(3)] Removal from Exempt Positions

a. In the event that an exempt position is eliminated, reduced, or reorganized, removal will occur in order of inverse City-wide seniority.

16

b. Removal from a specialized position for reasons other than as stated in subsection (a) above shall be for reasonable grounds. Notice of such removal shall be accompanied by a written explanation setting forth the reasons. If a member wishes to appeal such decision to remove, they may use the grievance procedures set forth in Section 5 of this agreement.

c. Nothing in this section shall be construed to limit the City's right to transfer employees in accordance with Section 3(E).

\* \* \* \*

[(E)(4)] <u>Bureau Transfers</u>

**Employees may be transferred by the Chief**, or their Commander, either temporarily or permanently, to another shift or station **for the good of the Bureau**. **The City may transfer officers**, **for the good of the [B]ureau**, where events or circumstances, jeopardize the ability of the officers to safely perform the duties of their position, including pending litigation or disciplinary action. . . .

(*Id.* at 375a, 377a (emphasis added).)

Last, Section 4 of the CBA addresses "Management," and subsection (A) provides:

The City and the Director . . . **through the Chief** . . . shall have the **exclusive right to** manage, administer, and supervise the employees including the right to schedule and assign work, **transfer**, and the sole and exclusive right to determine the size and organization of the [] Bureau including the discretion to determine vacancies and to fill vacancies in accordance with the needs of the Bureau and the public safety as determined by the Chief . . . , Director . . . , and the Mayor.

(*Id.* at 378a (emphasis added).)

The City argues Arbitrator exceeded his jurisdiction in this matter. The question of an arbitrator's jurisdiction "goes to his . . . power to decide an issue in dispute rather than his . . . fashioning of an award[.]" *Bensalem Township v. Bensalem Twp. Police Benevolent Ass'n, Inc.*, 803 A.2d 239, 243 (Pa. Cmwlth.

17

2002). "[A]n arbitrator exceeds his jurisdiction . . . when he addresses issues not submitted to him." *Pa. State Police v. Pa. State Troopers' Ass'n (Keyes)*, 54 A.3d 129, 133 (Pa. Cmwlth. 2012). "Arbitrators are **required to address the issues submitted within the context of the positions of the parties** and effectuate the relief requested, not to reform the collective bargaining agreements." *Marple Township v. Del. Cnty. Fraternal Ord. of Police Lodge 27*, 660 A.2d 211, 215 (Pa. Cmwlth. 1995) (emphasis added). However, an arbitrator has wide latitude to address any issues that are properly submitted and "may speak to an issue **if it is reasonably subsumed within the issues properly before the arbitration panel**." *Michael G. Lutz Lodge No. 5, Fraternal Ord. of Police v. City of Philadelphia*, 129 A.3d 1221, 1231 (Pa. 2015) (*Michael G. Lutz Lodge*) (emphasis added). While *Michael G. Lutz Lodge* involved an interest arbitration, the Supreme Court subsequently cited this principle in a grievance arbitration case in *Northern Berks Regional Police Commission v. Berks County Fraternal Order of Police, Lodge #71*, 230 A.3d 1022, 1033 (Pa. 2020), as did this Court in *Borough of State College*, 303 A.3d at 257, and *City of Pittsburgh v. Fraternal Order of Police, Fort Pitt Lodge #1*, 334 A.3d 34, 46 (Pa. Cmwlth. 2025).[5]

We conclude Arbitrator did not exceed his jurisdiction. Here, the Union filed a grievance challenging Grievant's transfer, which was not accompanied by any explanation, as violating Section 3 of the CBA, contending the transfer was, in reality, discipline being imposed as a result of a DHR investigation that had violated Grievant's contractually provided due process rights, and that Grievant was entitled

---

[5] *Cf. Ohio Twp. Police Ass'n v. Ohio Township*, 351 A.3d 338, 348 (Pa. Cmwlth. 2026) (footnote omitted) (observing, in a grievance arbitration case, that *Michael G. Lutz Lodge* was an interest arbitration case and stating "it is not entirely clear that this precedent applies in grievance arbitrations").

18

to the protections related to a disciplinary action, which were not provided. (R.R. at 536a.) The City's defense to the grievance was that the transfer was "for the good of the [B]ureau," and it attempted to establish this defense before Arbitrator. (*Id.* at 63a, 65a, 74a-79a.) The Union sought to prove that this defense was invalid, i.e., that Grievant's transfer was not for this purpose but was intended to punish him based on the withdrawn charges and information arising from the DHR investigation, which the Chief acknowledged was defective and could not form the basis of any discipline. (*Id.* at 62a, 64a, 66a-73a, 322a-24a.) This is the context in which Arbitrator issued the Award concluding that Grievant's transfer was not "for the good of the Bureau" but was premised on the "flawed" DHR investigation and was a pretext for discipline. (Award at 9-10.) Given the parties' positions in the grievance proceedings and before Arbitrator, Arbitrator addressed the issues presented to him in the Award, as he was required to do. *Marple Township*, 660 A.2d at 215.

Moreover, Arbitrator had wide latitude to address any issue that was properly submitted to him and "may speak to an issue if it is **reasonably subsumed within the issues properly before the arbitrat**[**or**]." *Michael G. Lutz Lodge*, 129 A.3d at 1231 (emphasis added). Considering the parties' arguments and positions, including the admissions by the Chief that the transfer was based in part on the DHR investigation and due to the text showing hostility toward Officer Crawford for his complaint, (R.R. at 303a-09a, 322a-26a), the validity of that investigation, as well as an alternative reading of the text in light of Grievant's and Officer Crawford's working relationship, were "reasonably subsumed" in the issues presented to Arbitrator. *Michael G. Lutz Lodge*, 129 A.3d at 1231. Contrary to the City's arguments, Arbitrator's addressing the validity of the DHR investigation and its

connection to Grievant's transfer was not an improper "de novo review" thereof, but an acceptance of the Chief's own testimony regarding the defects of that investigation and his reliance thereon to transfer Grievant notwithstanding those defects. (R.R. at 322a-24a.) Therefore, these are not reasons to conclude Arbitrator exceeded his jurisdiction in the Award or to reverse the trial court's Order.

We now turn to the City's claims that Arbitrator exceeded his authority by modifying the CBA as it relates to the City's managerial prerogative when Arbitrator failed to accept the Chief's explanations as to why transferring Grievant was for the good of the Bureau. Our Court has stated that an arbitrator does not exceed his authority if the acts he requires of the public employer are legal, relate to the terms and conditions of employment, and are acts that the employer could perform voluntarily. *Keyes*, 54 A.3d at 133. Thus, a reviewing court may not set aside an Act 111 award unless the arbitrator mandated an illegal act or addressed issues beyond the terms and conditions of employment. *Bristol Borough v. Bristol Borough Police Benevolent Ass'n*, 815 A.2d 662, 663 n.3 (Pa. Cmwlth. 2003). Additionally, Section 5(C)(3)(b) of the CBA specifically limits the authority of arbitrators, stating that an "[a]rbitrator shall not have the right to add to, subtract from, modify, or disregard any of the terms or provisions of the [CBA]." (R.R. at 384a.) Finally, arbitrators exceed their authority if they make awards on topics that are outside of the scope of Act 111, which include topics that fall within an employer's managerial prerogative as such matters are not bargainable under Act 111. *City of Philadelphia v. Fraternal Ord. of Police, Lodge No. 5*, 181 A.3d 485, 490 (Pa. Cmwlth. 2018).

We conclude that Arbitrator did not exceed his authority in granting the grievance based on the record evidence and the factual findings. *See City of*

20

*Pittsburgh*, 111 A.3d at 800 ("An arbitrator **does not exceed his authority** if the acts he requires the public employer to do are legal; are acts that the employer could do voluntarily; and relate to the terms and conditions of employment.") (emphasis added). There can be no dispute that ordering Grievant's reinstatement to his prior position was not illegal, it was something the City could do voluntarily, and it was related to the terms and conditions of Grievant's employment. Thus, these are not reasons to conclude that Arbitrator exceeded his authority.

The City's arguments focus, instead, on its allegation that Arbitrator infringed upon its managerial rights and deleted and/or modified the CBA's terms that give the Chief discretion to transfer Bureau officers because Arbitrator did not accept the Chief's explanations for Grievant's transfer. The City's contentions appear, primarily, to challenge Arbitrator's factual findings and determinations of evidentiary weight. The Chief provided an explanation for why Grievant's transfer was for the good of the Bureau, which was because the DHR's investigation substantiated Officer Crawford's complaint and to avoid potential liability. (R.R. at 303a-09a, 323a-24a, 326a.) He also agreed that he transferred Grievant as an alternative "remed[y]" for that DHR investigation because the related DAR could **not be used** to impose discipline on Grievant due to its flawed nature. (*Id.* at 322a-23a.) Arbitrator did not ignore that explanation, as the Award set forth the Chief's explanations, including that a new supervisor was desired to make the SDD a productive and safe working environment. (Award at 7-8.) However, in finding that the transfer was **not** for the good of the Bureau, Arbitrator necessarily gave lesser weight to the explanations relied upon by the City than to the Chief's other explanations for the transfer and to other evidence of why the transfer was not for the good of the Bureau. It is the arbitrator's prerogative to accept or reject testimony

21

and to evaluate credibility of witnesses. *City of Philadelphia v. Fraternal Ord. of Police Lodge No. 5*, 658 A.2d 453, 456 (Pa. Cmwlth. 1995). As Arbitrator's Award in this regard "depend[ed] upon fact-finding . . . , we apply the extreme standard of deference applicable to Act 111 awards . . . [and] are bound by the arbitrator's determination of these matters even though we may find them to be incorrect." *Pa. State Police*, 840 A.2d at 1062. Therefore, this is not a reason to conclude that Arbitrator exceeded his jurisdiction or authority.

Moreover, Arbitrator's giving less weight to the Chief's explanations did not modify, add, or delete terms from the CBA or infringe upon the City's managerial prerogative. The City itself acknowledges that its managerial rights relating to transferring employees are not absolute, are subject to Section 3's requirements, and are subject to review by an arbitrator. (The City's Reply Br. at 15-17.) In including that limitation in the CBA, the parties authorized that this language, and the City's compliance therewith, would be subject to the grievance process and an arbitrator's interpretation and fact-finding pursuant to Section 5 of the CBA. Under narrow certiorari review, that interpretation and fact-finding are subject to extreme deference. *Pa. State Police*, 840 A.2d at 1062. Accordingly, Arbitrator did not exceed his authority in interpreting Section 3(E)(4)'s language and reviewing the evidence to ascertain whether the City violated the CBA when it transferred Grievant under these circumstances. *See Borough of State College*, 303 A.3d at 255 (holding that "[a]n argument that an arbitrator misinterpreted a CBA is not within the confines of the narrow certiorari review"); *Pa. State Police*, 840 A.2d at 1062 (stating that an arbitrator's award that is based on fact-finding and contract interpretation is entitled to extreme deference). Thus, this is not a reason to reverse the trial court's Order.

## III. CONCLUSION

22

In sum, we conclude that Arbitrator did not exceed his jurisdiction or authority in issuing the Award. Accordingly, we affirm the trial court's Order that upheld that Award.

_____

RENÉE COHN JUBELIRER, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Pittsburgh, :
               Appellant :
 :
          v. : No. 456 C.D. 2025
 :
Fraternal Order of Police, Fort Pitt :
Lodge No. 1 (Brian Elledge - Transfer) :

## **O R D E R**

NOW, May 7, 2026, the Order of the Court of Common Pleas of Allegheny County, entered on March 10, 2025, is hereby **AFFIRMED**.

_____

RENÉE COHN JUBELIRER, President Judge